# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

                         :

ILLUMINA, INC.,                 :

                         :

             Plaintiff,       :

         v.                   :         C.A. No. 1:22-cv-334-VAC

                         :

GUARDANT HEALTH, INC.; HELMY   :

ELTOUKHY; and AMIRALI TALASAZ   :

                         :

            Defendants.     :

------------------------------------------------------- x

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
## UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(2), AND 12(B)(6)

OF COUNSEL:

Orin Snyder*
Jane M. Love*
Brian A. Rosenthal*
Grace E. Hart*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Greta B. Williams*
Sophia A. Vandergrift*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Dated: May 25, 2022

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Defendants Guardant Health,
Inc., Helmy Eltoukhy, and AmirAli Talasaz*

OF COUNSEL:

Trey Cox*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100

*pro hac vice* pending

# TABLE OF CONTENTS

**Page(s)**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.   SUMMARY OF THE ARGUMENT ..............................................................................3

III.  STATEMENT OF FACTS .............................................................................................4

    A.    Dr. Eltoukhy and Dr. Talasaz Co-Founded Guardant to Develop Life-Saving Cancer Testing Technology ...........................................................................4

    B.    Illumina Alleges that Defendants Misappropriated Its Confidential Information a Decade Before Filing This Action ......................................................5

IV.   ARGUMENT ...................................................................................................................7

    A.    Legal Standard ..........................................................................................................7

    B.    Illumina Has Failed to Plead a Plausible Inventorship and Ownership Claim under 35 U.S.C. § 256 ..................................................................................8

        1.    Illumina Failed to Plausibly State a Claim for Inventorship.......................9

        2.    Illumina Does Not Plausibly Allege an Ownership Interest in the Patents at Issue, and Thus it Lacks Standing ...............................................13

        3.    Illumina Cannot Challenge Patent Applications under Section 256..........16

    C.    Illumina's Trade Secrets Misappropriation Claim Fails as a Matter of Law.........17

        1.    Illumina Has Not Adequately Alleged a Trade Secret...............................17

        2.    To the Extent They Are Pleaded with Any Specificity, Illumina's Claims Are Time-Barred........................................................................19

    D.    Illumina's Breach of Contract Claims Fail as a Matter of Law ...........................21

        1.    Illumina's Breach of Contract Claims Are Untimely ...............................21

        2.    Illumina's Breach of Contract Claims Are Deficient Because Illumina Fails to Plead the Essential Terms of the Contracts ...................23

    E.    This Court Lacks Personal Jurisdiction over Dr. Eltoukhy and Dr. Talasaz .........24

V.    CONCLUSION................................................................................................................25

i

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*,
   2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ............................................................17, 18, 19

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014) ...............................................................................................14

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..................................................................................24

*Apple Inc. v. Allan & Assocs. Ltd.*,
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ......................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................7

*Blackhawk Network Inc. v. SL Card Co., Inc.*,
   2022 WL 704032 (D. Ariz. Mar. 9, 2022) .........................................................................10, 12

*Burroughs Wellcome Co. v. Barr Labs. Inc.*,
   40 F.3d 1223 (Fed Cir. 1994) .............................................................................................9, 11

*In re Chemed Corp., Shareholder Derivative Litig.*,
   2015 WL 9460118 (D. Del. Dec. 23, 2015) ..............................................................................7

*Chou v. Univ. of Chicago*,
   254 F.3d 1347 (Fed. Cir. 2001) ..............................................................................................13

*Corning Inc. v. SRU Biosystems, LLC*,
   292 F. Supp. 2d 583 (D. Del. 2003) ........................................................................................21

*Czarnik v. Illumina, Inc.*,
   437 F. Supp. 2d 252 (D. Del. 2006) ...................................................................................13, 16

*Display Research Labs., Inc. v. Telegen Corp.*,
   133 F. Supp. 2d 1170 (N.D. Cal. 2001) ...................................................................................17

*E.I. Du Pont de Nemours & Co. v. Okuley*,
   344 F.3d 578 (6th Cir. 2003) ..................................................................................................17

ii

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004)..........................................................................9

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998)..........................................................................9

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000)..............................................................................13

*Gross v. Symantec Corp.*,
  2012 WL 3116158 (N.D. Cal. July 31, 2012).....................................................23

*Hor v. Chu*,
  699 F.3d 1331 (Fed. Cir. 2012)........................................................................16

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  846 F.3d 625 (3d Cir. 2017)................................................................................8

*inno360, Inc. v. Zakta, LLC*,
  50 F. Supp. 3d 587 (D. Del. 2014).......................................................................8

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005)........................................................................15

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Off. Purveyor to
  the Imperial Ct. v. Heublein, Inc.*,
  936 F. Supp. 177 (D. Del. 1996)........................................................................25

*Klang v. Pflueger*,
  2014 WL 12587028 (N.D. Cal. Oct. 2, 2014).....................................................20

*Langan v. United Servs. Auto. Ass'n*,
  69 F. Supp. 3d 965 (N.D. Cal. 2014)............................................................23, 24

*Larson v. Correct Craft, Inc.*,
  569 F.3d 1319 (Fed. Cir. 2009)........................................................................13

*Loop AI Labs Inc. v. Gatti*,
  195 F. Supp. 3d 1107 (N.D. Cal. 2016) ............................................................18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................13

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)................................................................................7

*Nami* v. *Fauver*,
  82 F.3d 63 (3d Cir. 1996)....................................................................................8

iii

*NBCUniversal Media, LLC v. Superior Court*,
  225 Cal. App. 4th 1222 (Cal. Ct. App. 2014) ........................................................22

*Neuberger v. Gordon*,
  567 F. Supp. 2d 622 (D. Del. 2008) ........................................................................7

*Pappalardo v. Stevins*,
  746 F. App'x 971 (Fed. Cir. 2018) ........................................................................16

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ....................................................................18

*Plumlee v. Pfizer, Inc.*,
  664 F. App'x 651 (9th Cir. 2016) ..........................................................................23

*Reach & Assocs., P.C. v. Dencer*,
  269 F. Supp. 2d 497 (D. Del. 2003) ......................................................................25

*Regents of Univ. of California v. Chen*,
  2017 WL 3215356 (N.D. Cal. July 26, 2017) ........................................................21

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ........................................................18

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ..................................................................................11, 13

*Vanderbilt Univ. v. ICOS Corp.*,
  601 F.3d 1297 (Fed. Cir. 2010) ..............................................................................9

*Vendavo, Inc. v. Price f(x) AG*,
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......................................................18

*In re VerHoef*,
  888 F.3d 1362 (Fed. Cir. 2018) ............................................................................10

*Vint v. Universal Studios Co. LLC*,
  2021 WL 6618535 (C.D. Cal. Apr. 29, 2021) ......................................................23

*Wang v. Palo Alto Networks, Inc.*,
  2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ......................................................20

*Whitewater West Indus., Ltd. v. Alleshouse*,
  981 F.3d 1045 (Fed. Cir. 2020) ......................................................................13, 15

*Wiggins v. Physiologic Assessment Servs., LLC*,
  138 A.3d 1160 (Del. Super. Ct. 2016) ..................................................................25

iv

**STATUTES**

Cal. Civ. Code § 3426.1 ................................................................................................17

Cal. Civ. Code § 3426.6 ............................................................................................20, 21

Cal. Code Civ. Proc. § 337 ............................................................................................21

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This action is a brazen attempt by Illumina to put its chief rival out of business and stifle competition in the market for life-saving cancer technologies—a move that would suppress innovation and raise prices, all to the detriment of healthcare consumers and cancer patients in the U.S. and abroad.  Illumina does not seek to vindicate any legitimate rights against Guardant.  Illumina wants to force Guardant out of the market by bringing this sham patent and trade secrets case premised on alleged conduct that occurred ten years ago.  Illumina's claims are hopelessly time-barred and deficient as a matter of the law.  The Court should dismiss the complaint.

Defendant Guardant Health Inc. ("Guardant") is a trailblazing company that is revolutionizing the fight against cancer through blood-based cancer detection testing.  Guardant was founded in 2012 by Defendants AmirAli Talasaz and Helmy Eltoukhy, who are entrepreneurs and pioneers in the biotech industry.  Before founding Guardant, Dr. Talasaz and Dr. Eltoukhy worked for Illumina, Inc. ("Illumina"), which develops and manufactures tools for analysis of genetic variation and function.  Dr. Talasaz and Dr. Eltoukhy left Illumina in 2012 and 2013, respectively, to work for Guardant.  Since Guardant's founding, Illumina has been a close partner of Guardant.  Illumina has supplied Guardant with the next generation sequencing instruments upon which Guardant's cancer detection testing technology is built.  As a supplier to Guardant for nearly a decade, Illumina has had extensive interaction with Guardant and access to proprietary data about Guardant's development and the commercialization of its testing technology.  Over the course of its years-long relationship with Guardant, Illumina never once claimed Guardant or its founders misappropriated Illumina's intellectual property or proprietary information.

In 2021, Illumina acquired GRAIL for $8 billion.  GRAIL is Guardant's main competitor in developing and marketing blood-based cancer tests.  The Federal Trade Commission ("FTC") concluded Illumina's acquisition of GRAIL would harm innovation and potentially increase prices

in violation of the antitrust laws and sued to block the deal.  The Directorate-General for Competition of the European Commission also took issue with the proposed transaction based on concerns about its anticompetitive effects.  Remarkably, in an unprecedented move, Illumina closed the acquisition in the face of the objections of these regulators.  Once Illumina acquired GRAIL, everything changed.  Illumina turned on Guardant, its longtime business partner and new competitor.  Months after Illumina closed its acquisition of GRAIL, Illumina manufactured and launched this lawsuit, claiming for the first time Guardant's technology belongs to Illumina.

The timing of this lawsuit reveals Illumina's true motives.  Illumina's lawsuit comes shortly after Guardant cooperated with the FTC in its antitrust investigation of the proposed Illumina-GRAIL transaction, and just months after two Guardant executives publicly testified against the transaction during the FTC's administrative trial.  Illumina admits in the Complaint it has known about Defendants' supposed misappropriation of confidential information since at least June 2019—and Guardant's public patent applications have put Illumina on inquiry notice—at minimum—for much longer.  Illumina offers no excuse for its years-long delay in filing this lawsuit.  Illumina also does not (and cannot) identify any specific competitive harm or damages Illumina suffered as a result of the purported misappropriation.  Illumina's delay in filing this action—and the fact that it never once complained about the conduct that now forms the basis of its complaint[1]—make clear Illumina brought this retaliatory lawsuit to punish Guardant for

---

[1]  After Defendants filed this brief, Illumina sent an email saying this sentence and others like it were "inaccurate" because counsel for Illumina and Guardant discussed the claims in this case in the lead-up to this lawsuit.  Specifically, Illumina approached Guardant in May 2021—in advance of filing this action—concerning Illumina's potential claims relating to Guardant's alleged misappropriation of Illumina information.  Ten months later, Illumina filed this action about the very same subject matter.  It is common for the plaintiff to reach out to the defendant in the lead up to the filing of suit.  But this pre-litigation approach does nothing to change the fundamental point made in Defendants' motion: for nearly a decade, Illumina—Guardant's close partner and supplier—never once expressed any concerns or raised a claim that Guardant or its founders

2

cooperating in a federal law enforcement investigation and inhibit fair and robust competition in the market.  If Illumina is permitted to eliminate competition in this way, innovation will dwindle and prices will increase, all to the detriment of cancer patients.  In the Complaint, Illumina seeks to acquire ownership of 35 of Guardant's patents, including patents foundational to Guardant's business.  Illumina's anti-competitive tactics are an abuse of the court system.  Its claims against Guardant should be dismissed as a matter of law.

## II.    SUMMARY OF THE ARGUMENT

The Court should dismiss all claims in the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), respectively, for the following reasons.

1.    Illumina's inventorship and ownership claim fails as a matter of law for at least three reasons.  Illumina fails to plead the elements required under 35 U.S.C. § 256 for a joint inventorship claim; Illumina lacks standing to challenge the inventorship of Guardant's patents because it has not alleged an ownership interest; and only the U.S. Patent and Trademark Office ("USPTO") has the power to correct the inventorship of pending patent applications.

2.    Illumina's misappropriation of trade secrets claim under the California Uniform Trade Secrets Act ("CUTSA") is also not actionable.  Illumina is required to identify the trade secrets at issue, not simply list broad categories of allegedly confidential information, without specificity or limitation.  But that is precisely what the Complaint does.  Illumina pleads an open-ended list of broad categories of information Defendants purportedly misappropriated—including, for example, Illumina's "knowledge, methods, techniques, processes, programs, and compilations

---

misappropriated Illumina's information.  It was only in the aftermath of Illumina's deal to acquire GRAIL and Guardant's cooperation with regulators that Illumina approached Guardant in May 2021 with potential claims, which materialized into this retaliatory lawsuit months later in March 2022.

for genetic sequencing." (Compl. ¶ 104.) But Illumina never points to even a single, specific item of information within those categories it contends is a trade secret. This is insufficient as a matter of law. To the extent Illumina attempts to identify any alleged trade secrets with particularity, those purported trade secrets were publicly disclosed in Guardant's patent applications filed at least *six years ago* and are therefore barred by the CUTSA's three-year statute of limitations.

3.      Illumina's breach of contract claims are also time-barred because they arise from alleged conduct that occurred *a decade ago* while Drs. Eltoukhy and Talasaz were employed at Illumina. Illumina attempts to plead around the clear statute of limitations bar by alleging it did not learn of the alleged breaches—which include Drs. Eltoukhy and Talasaz's incorporation of Guardant in 2011 and purported misappropriation in 2012—until 2019. This makes no sense. Illumina could have discovered any purported misappropriation of confidential information with minimal diligence. And publicly available information, including Guardant's patent applications and SEC filings, put Illumina on, at a minimum, inquiry notice of the alleged breaches many years ago. In any event, Illumina's contract claims are fatally deficient on the pleadings. Illumina fails to plead the material terms of any of the contracts Drs. Eltoukhy and Talasaz supposedly breached.

4.      Illumina's trade secret and contract claims against Drs. Eltoukhy and Talasaz also fail for lack of personal jurisdiction. Illumina fails to establish Drs. Eltoukhy and Talasaz, who have no connection to Delaware other than their roles with Guardant (a Delaware corporation) and their involvement in unrelated patent litigation, are subject to personal jurisdiction in Delaware.

## III.    STATEMENT OF FACTS

### A.    Dr. Eltoukhy and Dr. Talasaz Co-Founded Guardant to Develop Life-Saving Cancer Testing Technology

Guardant is a precision oncology company based in Redwood City, California. (Compl. ¶ 10.) Guardant is dedicated to helping cancer patients live longer and healthier lives through the

power of genetic sequencing that can detect and identify cancers based on DNA found in blood samples.

Guardant was co-founded by Dr. Talasaz, who joined Guardant as its first employee in June 2012 (Compl. ¶¶ 11, 28-30), and Dr. Eltoukhy, who was an early investor in Guardant and joined the company as an employee in January 2013 (*id.* ¶¶ 11, 63-64). Drs. Eltoukhy and Talasaz are the co-CEOs of Guardant. Drs. Eltoukhy and Talasaz previously worked for Illumina, which is a company headquartered in San Diego that develops and manufactures tools for analysis of genetic variation and function. (*Id.* ¶ 4.) Dr. Talasaz was hired by Illumina in 2009, and worked for Illumina until June 25, 2012. (*Id.* ¶¶ 17, 28.) Dr. Eltoukhy was hired by Illumina in 2008, submitted his resignation in December 2012, and left Illumina on January 2, 2013. (*Id.* ¶¶ 17, 63.)

### B.     Illumina Alleges that Defendants Misappropriated Its Confidential Information a Decade Before Filing This Action

Illumina's claims arise from Defendants' alleged misappropriation of Illumina's intellectual property a decade ago. *First*, the Complaint alleges that Illumina employees somehow contributed novel concepts and work to 35 patents assigned to Guardant. (Compl. ¶ 85.) Illumina alleges that Dr. Eltoukhy, while employed at Illumina in 2012, collaborated with Dr. Talasaz and contributed to the conception of certain of the claims in these 35 patents and that other Illumina employees (Illumina identifies only Frank Steemers) also contributed to the conception of certain of these 35 patents. (*Id.* ¶ 91; *see id.* ¶¶ 40-62.) Illumina alleges that the inventorship of Guardant's patents should be "corrected" to add as inventors Dr. Eltoukhy and at least Mr. Steemers, "a senior Illumina director and researcher," who, according to Illumina, would then be obliged to assign their rights in those inventions to Illumina. (*Id.* ¶¶ 40, 93-96, 100-102.)

Illumina further alleges that during the second half of 2012, Dr. Eltoukhy provided assistance to Guardant by obtaining and forwarding Illumina confidential material to his personal

Gmail account and at times forwarding Illumina information to Dr. Talasaz, who by that time was working for Guardant. (Compl. ¶ 49.) The Complaint does not allege that Dr. Talasaz himself ever used Illumina confidential information in his invention process. Illumina alleges only that Dr. Eltoukhy somehow used this information to "collaborate with" Dr. Talasaz. (*Id.* ¶ 91.)

*Second*, Illumina alleges Defendants misappropriated Illumina's trade secrets, including by Dr. Eltoukhy's requesting, and sharing with Dr. Talasaz, PowerPoint slides from Mr. Steemers in June 2012, and through Dr. Eltoukhy's retention of his Illumina computer, which contained approximately 51,000 emails, when his employment ended in January 2013. (Compl. ¶¶ 46-47, 65, 105-06.) Illumina claims it suffered some unspecified competitive harm and damages as a result of this alleged misappropriation. (*Id.* ¶¶ 114-16.) Illumina does not, however, allege how Dr. Talasaz relied on any of these Illumina materials in inventing anything for Guardant.

In 2019, six years after Dr. Eltoukhy left Illumina, during discovery in a separate litigation against Foundation Medicine, Inc. and Personal Genome Diagnostics, Guardant discovered the existence of these emails in a backup of Dr. Eltoukhy's computer. (Compl. ¶¶ 75-78.) Illumina does not allege Dr. Eltoukhy or anyone else at Guardant was aware of, had access to, or accessed, these files between 2013 and 2019. Illumina never alleges it was unaware of Drs. Eltoukhy and Talasaz's active involvement in Guardant after they left Illumina—nor could it given the close and longstanding partnership between the two companies. Illumina also does not allege it performed any diligence whatsoever between the end of Drs. Talasaz's and Eloutkhy's employment with Illumina (in 2012 and 2013, respectively) and 2019 in order to determine whether they had taken any confidential Illumina information. The Complaint also admits that Illumina has known about the purported misappropriation of these emails since at least June 2019 (*id.* ¶¶ 75, 78), yet inexplicably waited nearly three years before filing this lawsuit. Even worse, despite having known about the allegedly misappropriated emails for years, the Complaint is devoid of any factual

allegations identifying even a single misappropriated trade secret in any of these emails.

*Third*, Illumina alleges Drs. Talasaz and Eltoukhy breached "various employment contracts and company policies" by "incorporat[ing] Guardant" in 2011 while they were employed at Illumina. (Compl. ¶¶ 122, 125, 133, 136.)  Illumina further alleges Dr. Eltoukhy breached these contracts by (1) "acting as an advisor, corporate agent, and fiduciary of Guardant while employed by Illumina" (*id.* ¶ 125); (2) transferring "Illumina confidential and propriety information outside of Illumina" (*id.* ¶ 125; *see id.* ¶¶ 40-49, 53-57); and (3) "contribut[ing] to the development of Guardant's technology while an employee of Illumina" (*id.* ¶ 125).  Illumina claims it "first learned" of these alleged breaches in June 2019 and June 2020 (*id.* ¶¶ 128, 139)—even though Guardant's incorporation in 2011 and Drs. Talasaz's and Eltoukhy's work for Guardant starting in 2012 and 2013, respectively, was disclosed in SEC filings, press releases and other public sources.[2]

## IV.    ARGUMENT

### A.    Legal Standard

A complaint is subject to dismissal under Rule 12(b)(6) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'"; a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), nor is it obligated

---

[2] *See, e.g.*, Silver Decl., Exs. 1-4 (Guardant SEC Forms D filed in 2014, 2015, and 2016; each listing 2011 as Guardant's "Year of Incorporation/Organization"); *id.*, Ex. 5 (Aug. 26, 2014 press release identifying Dr. Eltoukhy the "Co-Founder and Chief Executive Officer" of Guardant and describing Guardant's accomplishments "[i]n just two years"); *id.*, Ex. 6 (Sept. 19, 2013 press release describing Dr. Eltoukhy as the "Founder" of Guardant).  The Court may take judicial notice of publicly available SEC filings and news articles.  *See In re Chemed Corp., Shareholder Derivative Litig.*, 2015 WL 9460118, at *1 n.2 (D. Del. Dec. 23, 2015) (SEC filings); *Neuberger v. Gordon*, 567 F. Supp. 2d 622, 630 (D. Del. 2008) (news article).

to credit allegations that are "self-evidently false." *Nami* v. *Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

A complaint is further subject to dismissal under Rule 12(b)(1) where a plaintiff lacks Article III standing. Where a defendant challenges the sufficiency of the allegations to support Article III standing, the Rule 12(b)(1) motion is considered a "facial attack" and courts "apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

Rule 12(b)(2) permits a party to challenge a court's exercise of personal jurisdiction over him or her. "[T]he plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction." *inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 592 (D. Del. 2014). That showing requires both "a statutory basis for jurisdiction under the forum state's long-arm statute" and that "the exercise of jurisdiction comports with the defendant's right to due process." *Id.*

### B.    Illumina Has Failed to Plead a Plausible Inventorship and Ownership Claim under 35 U.S.C. § 256

Illumina claims ownership of thirty-five (35) Guardant patents[3] and at least nine related patent applications with a two-part argument:  it first argues Dr. Eltoukhy, Mr. Steemers, or both should be added as joint inventors, and then argues it owns the patents based on employment agreements it neither attached to its Complaint nor pleaded by their essential terms.

---

[3] The first patent family (the "'127 Patent Family") includes 19 of the Patents at Issue:  the '127 Patent (Ex. F), '731 Patent (Ex. A), '882 Patent (Ex. B), '743 Patent (Ex. C), '7063 Patent (Ex. R), '995 Patent (Ex. G), '678 Patent (Ex. H), '808 Patent (Ex. I), '810 Patent (Ex. J), '556 Patent (Ex. K), '364 Patent (Ex. N), '916 Patent (Ex. O), '663 Patent (Ex. Q), '592 Patent (Ex. AA), '171 Patent (Ex. U), '172 Patent (Ex. V), '600 Patent (Ex. Z), '376 Patent (Ex. CC), and '899 Patent (Ex. DD).  The second patent family (the "'992 Patent Family") includes nine of the Patents at Issue:  the '992 Patent (Ex. D), '974 Patent (Ex. Y), '152 Patent (Ex. T), '086 Patent (Ex. M), '085 Patent (Ex. L), '797 Patent (Ex. FF), '880 Patent (Ex. S), '265 Patent (Ex. BB), and '796 Patent (Ex. EE).  The third patent family (the "'366 Patent Family") includes seven of the Patents at Issue:  the '366 Patent (Ex. E), '139 Patent (Ex. W), '1063 Patent (Ex. P), '858 Patent (Ex. CC), '221 Patent (Ex. GG), '306 Patent (Ex. HH), and '307 Patent (Ex. II).

Illumina's ownership claims fail as a matter of law for three reasons. At the outset, its allegations are impermissibly vague and conclusory, especially given the number of Guardant patents Illumina seeks to co-opt. Illumina fails to identify *any* specific contribution it allegedly made to the vast majority of the 35 Guardant patents Illumina supposedly co-invented. And for the handful of remaining patents, Illumina's alleged contributions are far too vague and conclusory to satisfy pleading requirements. Moreover, even if the allegations of co-inventorship were sufficient—which they are not—Illumina fails to adequately plead any plausible basis it has an ownership interest in the patents, since it fails to attach or adequately describe the alleged agreements that provide such an interest. Finally, Illumina's ownership claim over the nine patent applications is facially deficient, as a party cannot pursue ownership of a yet-to-issue patent application in district court.

### 1.    Illumina Failed to Plausibly State a Claim for Inventorship

Illumina cannot get over even the first hurdle of its two-part argument because it does not plausibly allege its personnel are co-inventors of the 35 Patents at Issue. Since the premise of Illumina's allegations is joint inventorship, Illumina must plausibly plead facts from which it can be concluded each alleged joint inventor "contribute[d] to the joint arrival at a definite and permanent idea of the invention as it will be used in practice" and there was some "collaboration" and concerted effort between inventors. *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1227, 1229 (Fed Cir. 1994); *see also Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303, 1306-08 (Fed. Cir. 2010) ("a group of co-inventors must collaborate and work together to collectively have a definite and permanent idea of the complete invention"); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) (similar). The allegations must also plausibly allege the would-be inventors made *inventive* contributions. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Merely providing "well-known principles or explain[ing] the state

9

of the art without ever having a 'firm and definite idea'" is not enough.  *Id.*; *see also In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018).

Illumina seeks to name Dr. Eltoukhy as a joint inventor of the '127 and '992 Patent Families, and Mr. Steemers as a joint inventor of the '127, '992, and '366 Patent Families, comprising in all 35 issued U.S. patents (Compl. ¶¶ 143(A)-(B)).  But Illumina's Complaint makes only conclusory assertions describing Dr. Eltoukhy's contributions, and even then, only in reference to seven claims of the 178 claims in seven of the patents in the '127 and '992 Patent Families.[4]  (Compl. ¶¶ 93-95.)  The Complaint says nothing at all (conclusory or otherwise) about Dr. Eltoukhy's contributions as to the other patents in those families.[5]  Illumina also does not explain how, on the basis of Dr. Eltoukhy's alleged contribution to the conception of claims in seven patents, it is able to infer that he also contributed to the conception of those patents' parent patents, sister patents, or patents in a different branch of a patent family.[6]

For those few patents that Illumina actually purports to address, Illumina's claims about Dr. Eltoukhy's alleged contributions are insufficient to state a claim.  *See Blackhawk Network Inc. v. SL Card Co., Inc.*, 2022 WL 704032, at *7-8 (D. Ariz. Mar. 9, 2022) (finding allegations similar to Illumina's to be insufficient to state claim and explaining "[s]imply stating that [certain]

---

[4] In the '127 Patent Family, Illumina alleges Dr. Eltoukhy contributed to the conception of claim 1 of the '731 Patent, claim 10 of the '743 Patent, claim 24 of the '995 Patent, and claim 1 of the '810 Patent.  In the '992 Patent Family, Illumina alleges that he contributed to the conception of claim 23 of the '152 Patent and claim 20 of the '880 Patent.  And in the '366 Patent, Illumina alleges conception of claim 2 of the '858 Patent.

[5] Illumina alleges nothing about Dr. Eltoukhy's contribution to patents including the '127 Patent, '882 Patent, '7063 Patent, '678 Patent, '808 Patent, '916 Patent, '556 Patent, '364 Patent, '663 Patent, '592 Patent, '171 Patent, '172 Patent, '600 Patent, '376 Patent, '899 Patent, '992 Patent, '974 Patent, '086 Patent, '085 Patent, '797 Patent, '265 Patent, '796 Patent, '366 Patent, '139 Patent, '1063 Patent, '221 Patent, '306 Patent, and '307 Patent.  (*See* Compl. ¶¶ 93-94.)

[6] For example, Illumina alleges conception of claims in the '731 and '743 Patents (*i.e.*, two of the three children of the '127 Patent).  Illumina does not explain how conception of a claim in a child patent can be a basis to infer conception of a claim in the parent patent (here, the '127 Patent).

10

employees contributed to [the patented] invention, without more, is insufficient to plausibly allege Article III standing"). Illumina makes three allegations of supposed collaboration on Dr. Eltoukhy's part: (1) that he forwarded to Dr. Talasaz PowerPoint slides that he had received from Mr. Steemers (Compl. ¶¶ 20-25, 46-49); (2) that he forwarded to Dr. Talasaz "additional Illumina material that was marked 'Company Confidential'" (*id.* ¶ 53); and (3) that he emailed draft claims for Guardant patents from his Illumina email to his personal email two weeks before leaving Illumina (*id.* ¶¶ 54-55). None of these is adequate. The slides cannot be a basis for an claim of inventorship because Illumina does not assert that Dr. Eltoukhy created the slides or was even involved in their creation (Illumina never alleges who created them). The same is true of the "additional Illumina material"—Illumina never alleges what that "material" was, let alone who created it or whether Dr. Eltoukhy had anything to do with its creation. Similarly, the draft patent claims—without a great deal more—cannot be the basis for an inventorship claim. Drafting patent claims does not equal or even imply conception—wordsmithing patent claims does not make patent lawyers and prosecutors into inventors. Illumina has not come close, as it must, to "clearly . . . alleg[ing] facts demonstrating" Dr. Eltoukhy's alleged contribution. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

Illumina also has not plausibly alleged that Dr. Eltoukhy collaborated with Dr. Talasaz or any other inventor—one of the requirements to be a *joint* inventor, *Burroughs Wellcome*, 40 F.3d at 1228. Illumina's only allegation about collaboration is entirely conclusory and relates only to the '127 Patent Family. (*See* Compl. ¶ 91.) Illumina's assertion that "Eltoukhy and Talasaz worked on and discussed technology they would use to start Guardant" (*id.* ¶ 21; *see id.*, ¶¶ 20, 22-25, 91) is also conclusory and does not even reference an invention, let alone describe any related collaboration. Illumina's allegation that Dr. Eltoukhy forwarded an email containing slides from Mr. Steemers to Dr. Talasaz after the latter's departure from Illumina (*id.* ¶¶ 40-50) is also

inadequate. Even if forwarding to an inventor an email that someone else wrote could constitute collaboration by the forwarder in a subsequently-conceived invention, Illumina does allege to what invention in 35 patents and nine patent applications this supposed collaboration relates.

Illumina's allegations with respect to Mr. Steemers are even worse. For him, Illumina does not make any effort to allege what Mr. Steemers's contributions were at all, if any. (*Compare* Compl. ¶¶ 93-95, *with id.* ¶ 90.) At most, Illumina claims that the slides Mr. Steemers provided to Dr. Eltoukhy—the sole basis for its inventorship claim as to Mr. Steemers—"reflected years of novel work by Illumina personnel" not necessarily including Mr. Steemers. (*Id.* ¶ 48.) Illumina alleges that these slides relate to "the error rate improvements and communications theory ideas Eltoukhy asked about." (*Id.* ¶ 46.) But Illumina never alleges that *Mr. Steemers* created, contributed to, or even worked on the slides that were shared or the matters supposedly discussed therein. (*See id.* ¶ 48.) Illumina also does not allege that Mr. Steemers even *knew* anything about Dr. Eltoukhy's ideas other than that Dr. Eltoukhy was "thinking about creating some Matlab models for some communication theory ideas he had on how to decode barcodes more effectively." (*Id.* ¶ 42.) Illumina clearly intends these allegations to suggest that Dr. Eltoukhy *misled* Mr. Steemers about Dr. Eltoukhy's work with Guardant, but these allegations also foreclose any inference that Mr. Steemers and Dr. Eltoukhy were collaborating.

The allegations with respect to both alleged co-inventors are insufficient and incomplete. As other district courts have found, to plausibly plead an inventorship claim, Illumina must "specifically identify any employee's purported contribution or describe the manner in which any employee 'worked collaboratively' with [the named inventors]." *Blackhawk Network Inc.*, 2022 WL 704032, at *8. Illumina does nothing of the kind. As set out above, it does not adequately allege collaboration of Dr. Eltoukhy or Mr. Steemers with any inventor and it does not even allege the date of conception of any resulting invention.

12

## 2. Illumina Does Not Plausibly Allege an Ownership Interest in the Patents at Issue, and Thus it Lacks Standing

Even if Illumina had properly pled its allegations of co-inventorship, its ownership allegations still fail because they do not and cannot properly plead ownership of the patents. Pursuant to Rule 12(b)(1), Illumina thus lacks standing to change the inventorship of any Patents at Issue. *See Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 256-57 (D. Del. 2006) ("When asserting a facial challenge [to standing], a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction." (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). To maintain a claim in federal court, Illumina must meet Article III's constitutional standing requirements: (1) an injury in fact that is concrete and actual or imminent; (2) the injury is fairly traceable to the conduct complained of; and (3) a judicial remedy can redress the injury. *Id.* at 256; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). It is Illumina's burden to clearly allege each element in its Complaint. *Spokeo*, 578 U.S. at 338 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." (alteration in original)).

To plead a cognizable injury for an ownership claim under Section 256, Illumina must allege facts demonstrating that it has either expected ownership rights or an actual "concrete financial interest" in the Patents at Issue. *See Chou v. Univ. of Chicago*, 254 F.3d 1347, 1358-59 (Fed. Cir. 2001); *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009); *see also Whitewater West Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1047 (Fed. Cir. 2020) (holding assignment provision void under California law and employer thus "lack[ed] standing to contest inventorship"). Illumina asserts only a single basis for alleged inventorship under Section 256— the prospective acquisition of an ownership interest in the patents through an assignment provision supposedly contained in Dr. Eltoukhy's and Mr. Steemers's employment agreements, agreements

13

it neither provides to the Court nor sufficiently describes in the Complaint.  (Compl. ¶¶ 97-98.)

Notably, Illumina does not allege Mr. Steemers signed, or describe the terms of, any such

agreement.  (*See id.* ¶¶ 100, 102.)  Illumina's threadbare allegations are not sufficient to plead an

ownership interest, and its inventorship claims should be dismissed for lack of standing.

### a.   *Illumina Has Not Alleged a Sufficient Interest through Dr. Eltoukhy's Employment Agreements*

Illumina has not sufficiently pled an ownership interest to have standing to challenge the

inventorship of the '127 and '992 Patent Families.  Even assuming all of Illumina's allegations are

true and Dr. Eltoukhy conceived of the inventions claimed in the '127 and '992 Patent Families,

by its own characterization, Illumina would not be able to claim ownership over those patent

families.  According to Illumina, Dr. Eltoukhy's agreements required him to "assign to Illumina

their ***inventions made while employed*** by Illumina that are related to Illumina's business."

(Compl. ¶ 19 (emphasis added).)  But Illumina never alleges Dr. Eltoukhy—or anyone else—

conceived of the inventions claimed in the '127 and '992 Patent Families while Dr. Eltoukhy was

employed by Illumina.  Instead, Illumina alleges only that Dr. Eltoukhy *contributed* to the

inventions during his employment—not that any invention was conceived then.  (*E.g.*, *id.* ¶ 90

("Eltoukhy (while employed by Illumina) . . . *contributed* novel concepts and work to the

inventions . . . ." (emphasis added)); ¶ 92 ("Eltoukhy, while employed at Illumina, *contributed* to

the conception of claimed inventions . . . ." (emphasis added)); ¶¶ 62, 93-95 (same).)

But an invention has not been "invented" any time a joint inventor merely makes some

contribution to what ultimately becomes an invention.  The legally relevant date—the date on

which the invention was "invented" and the hypothetical assignment provision here, if valid,

conceivably could have been triggered—is the date of ***conception***, not ***contribution***.  *See*, *e.g.*,

*Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) ("The invention date [of a patent]

is the date of conception."); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005). Accordingly, even by Illumina's own characterization of the assignment provision, Illumina would have no ownership interest in the '127 and '992 Patent Families absent some allegation (and ultimately proof) that the inventions in those patents were conceived of while Dr. Eltoukhy was employed by Illumina.[7] There is no such allegation anywhere in the Complaint. And to the extent that Illumina seeks to force an assignment of any inventions conceived after Dr. Eltoukhy left Illumina in January 2013, the agreement is almost certainly invalid as a matter of California law. *See Whitewater West Indus.*, 981 F.3d at 1053-58 (collecting cases and holding that California Labor Code § 2870(a) does "not [] apply to post-employment inventions").

### b. *Illumina Has Not Alleged an Ownership Interest through Mr. Steemers*

Unlike with Dr. Eltoukhy, Illumina does not even allege Mr. Steemers signed an employment agreement (or any other agreement) with Illumina requiring him to assign inventions to Illumina. Nor does it allege Mr. Steemers was otherwise obligated to assign any patent rights during his employment. Illumina's inventorship claim based on Mr. Steemers should be dismissed under Rule 12(b)(1) for this reason alone. *See Whitewater West Indus.*, 981 F.3d at 1047. Without plausibly pleading that Mr. Steemers's inventions belong to Illumina, Illumina's ownership claim based on Mr. Steemers's alleged contributions are dead on arrival.

Illumina has also not alleged it would obtain ownership because of Mr. Steemers's supposedly inventive contributions (were any alleged). Illumina characterizes its employment agreements as requiring assignments of "*inventions made* [*i.e.*, conceived] while employed by

---

[7] Dr. Eltoukhy is already a listed inventor of the '366 Patent Family. To the extent Illumina seeks to claim ownership over that patent family by virtue of Dr. Eltoukhy's purported assignment obligations, it similarly fails to allege a sufficient ownership interest because it alleges nothing about when the inventions claimed in those patents were conceived or whether that occurred while Dr. Eltoukhy had any assignment obligation to Illumina.

Illumina that are related to Illumina's business" (Compl. ¶ 19), but again it does not allege when the inventions claimed by the '127, '992, or '366 Patent Families were conceived—let alone that they were conceived during Mr. Steemers's employment. At most, Illumina alleges Mr. Steemers "*contributed to the conception* of claimed inventions" during his employment. (Compl. ¶ 96; *see id.* ¶ 90.) As explained above, that is not enough to assert an ownership interest. Again, the legally relevant date is the date of conception, not contribution. (*See* Section IV.B.2.a, *supra.*) To the extent Mr. Steemers's supposed assignment agreement required assignment of inventions that were *invented* (*i.e.*, conceived) during employment, Illumina has failed to plead an ownership interest through Mr. Steemers because Illumina does not allege *when* the inventions were conceived and it does not allege the dates of Mr. Steemers's employment at Illumina.[8]

### 3.  Illumina Cannot Challenge Patent Applications under Section 256

The Court should dismiss Illumina's claims under Section 256 seeking to change inventorship and transfer ownership of the nine patent applications, of which it alleges that both Dr. Eltoukhy and Mr. Steemers are joint inventors. (*See* Compl. ¶¶ 82, 143(A)-(B).) Section 256 authorizes courts to change the inventorship only of *issued* patents, not pending patent applications, *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) ("A [Section] 256 claim for correction of inventorship does not accrue *until the patent issues*." (emphasis added)), and Section 116(c), which allows for the USPTO to change inventorship of patent applications, does not create a "private cause[] of action," *Pappalardo v. Stevins*, 746 F. App'x 971, 973-74 (Fed. Cir. 2018).

Illumina knows this: *it has successfully made this exact argument before this very Court*. *Czarnik*, 437 F. Supp. 2d at 255, 257-58 (granting Illumina's motion to dismiss inventorship claims directed to pending patent applications because Section 256 only "permits district courts to make

---

[8] Any agreement purporting to require assignment of Mr. Steemers's post-employment inventions is likely invalid. *See* Section IV.B.2.a, *supra.*

changes to inventorship on *issued* patents," not patent applications (emphasis added)). And as the

Sixth Circuit has explained, this statutory structure is both intentional and purposeful:

> While the patent is still in the process of gestation, it is solely within the authority of the Director. As soon as the patent actually comes into existence, the federal courts are empowered to correct any error that the Director may have committed. Such a scheme avoids premature litigation and litigation that could become futile if the Director declined to grant a patent or voluntarily acceded to the claims of the would-be inventor prior to issue.

*E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583-84 (6th Cir. 2003).

Illumina asks the Court to change the inventorship of the applications "if issued as patents"

(*see, e.g.*, Compl. ¶¶ 143(A)-(B)) but this just confirms that Illumina's claim is "not ripe." *Display*

*Research Labs., Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1174 (N.D. Cal. 2001).

### C.    Illumina's Trade Secrets Misappropriation Claim Fails as a Matter of Law

Illumina's claim for misappropriation of trade secrets under CUTSA fails for at least two

related reasons. *First*, Illumina's allegations of trade secrets are too vague to satisfy the applicable

pleading standard. *Second*, the only alleged trade secrets identified with any particularity are not

secret: they were publicly disclosed in patent applications and are time-barred.

### 1.    Illumina Has Not Adequately Alleged a Trade Secret

Illumina's Complaint fails on the first element of its misappropriation claim—Illumina has

not identified any purported trade secret.[9] To adequately identify a trade secret, Illumina must

"describe the subject matter of the trade secret with sufficient particularity to separate it from

---

[9] CUTSA defines a trade secret as information that:  "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d); *see Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *2 (C.D. Cal. Mar. 27, 2019) (to state a trade secret misappropriation claim, a plaintiff must allege:  (1) "the plaintiff owned a trade secret," (2) "the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means," and (3) "the defendant's actions damaged the plaintiff").

matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).   Although courts do not require so much detail as to disclose the trade secret itself, courts have "rejected the use of 'catchall' language, holding that such language is insufficiently specific 'because it does not *clearly refer* to tangible trade secret material.'"  *Acrisure*, 2019 WL 4137618, at *3 (quoting *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115 (N.D. Cal. 2016) (rejecting "'catchall' wording such as 'including' when describing the trade secrets")).

The Complaint comes nowhere near meeting this standard.  Instead of pleading a specific trade secret, Illumina relies on generalizations and catch-phrases, vaguely alleging that Drs. Eltoukhy and Talasaz misappropriated "error correction methods and communication theory ideas," and "knowledge, methods, techniques, processes, programs, and compilations for genetic sequencing."  (Compl. ¶¶ 57, 104.)  This is nothing more than describing "its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets."  *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *see Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (rejecting the following allegations as insufficiently specific:  "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers").  Illumina also points to the 51,000 emails allegedly retained by Dr. Eltoukhy supposedly containing "confidential, proprietary, and trade secret information of Illumina."  (Compl. ¶¶ 65, 106.)  These are "broad, categorical terms," not particularized trade secrets, as required under the CUTSA. *Vendavo, Inc.*, 2018 WL 1456697, at *4.  Illumina also fails to even allege how these purported trade secrets derive independent economic value or whether they were subject to reasonable

measures to maintain their secrecy. These failures doom Illumina's trade secrets claim.

Illumina attempts to offer "[o]ne example" of "information that constitutes a trade secret under CUTSA," pointing to the slide deck that Illumina alleges that Dr. Eltoukhy received from Mr. Steemers. (Compl. ¶ 105.) This allegation also fails upon even a cursory review. Illumina relies on impermissible catchall language as to what the slides "included, among other things." (*Id.*) The unidentified "other things" are not described, let alone with sufficient particularity. *See Acrisure*, 2019 WL 4137618, at *3 (rejecting "catchall" language). And as detailed below, the limited content in the slides that Illumina *is* able to identify is content Illumina alleges elsewhere in the Complaint has been public for nearly a decade through Guardant's patents.

### 2.    To the Extent They Are Pleaded with Any Specificity, Illumina's Claims Are Time-Barred

The only purported trade secrets Illumina even attempts to identify with anything that even approaches specificity are for "information concerning random coding improvement in error rate for use in genetic sequencing to obtain better accuracy from fewer sequence reads," and "methods for grouping sequence reads into families and then collapsing those reads into a single consensus sequence from the sequence reads in the families."[10] (Compl. ¶¶ 41, 57.) Illumina alleges these purported trade secrets were contained in the PowerPoint slides Dr. Talasaz allegedly received from Mr. Steemers and provided to Dr. Elotoukhy. (*Id.* ¶¶ 41, 46, 49-50.) While these allegations still lack sufficient particularity to allege a trade secret (*see supra* Section IV.C.1), they do reveal Illumina's trade secret claims are *years* out of time—these purported trade secrets contain the very same information Illumina claims Mr. Steemers and Dr. Eltoukhy contributed to the inventions Guardant made public in a series of patents at least as early as 2015 and 2016. In fact, with

---

[10] Paragraph 41 clearly references the content purportedly contained in the slide deck; paragraph 57's reference to "[m]aterials that Eltoukhy obtained from Illumina employees" is either describing the same content or is ambiguous and should be disregarded.

reference to this purported trade secret information, Illumina expressly states, "Eltoukhy and Talasaz used the Illumina information . . . including in patent applications that issued as U.S. patents." (Compl. ¶¶ 50, 57.)  Therefore, based on its own binding pleading admissions, Illumina has been on constructive notice (if not actual notice) of any alleged misappropriation of the specified information since that years-old publication and its claims are time-barred.

Misappropriation claims under CUTSA are subject to a three-year limitations period.  Cal. Civ. Code § 3426.6.  While Illumina alleges it was unaware of the "removal of Illumina confidential information . . . until in or around June 2019" (Compl. ¶ 75), Illumina fails to allege it was unaware of Guardant's purported publication of Illumina trade secrets in Guardant patents prior to that time.  Illumina's Complaint calls out three specific patents:  the '731 Patent (*id.* ¶ 58); '992 Patent (*id.* ¶ 59); and '127 patent (*id.* ¶ 61)—each of which was issued in either 2017 (the '731 Patent) or 2018 (the '992 and '127 Patents), and applied for in either 2015 (the '731 and '127 Patents) or 2016 (the '992 Patent).  (*See id.*, Exs. A, D, F.)  "[S]urely publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication."  *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014) (collecting cases and dismissing trade secrets claim as time-barred).

Illumina "has pled no facts that show [an] inability to discover these applications following their publication despite reasonable diligence."  *Klang v. Pflueger*, 2014 WL 4922401, at *6 (N.D. Cal. Oct. 2, 2014) (granting motion to dismiss).[11]  Because Illumina's claims of misappropriation are based on content published in the identified patents, each of which was issued more than three

---

[11] To the contrary, Illumina's claim to inventorship requires that the inventions in question be "related to Illumina's business," so if it pleaded that it did not review these patents because they were unrelated to its business, that would be another reason why its inventorship claim fails.

years prior to Illumina filing this action in March 2022, its claims are time-barred and must be dismissed. *Regents of Univ. of California v. Chen*, 2017 WL 3215356, at *4-5 (N.D. Cal. July 26, 2017) (applying *Wang* to hold that "the issuance of the [patent] . . . sufficed to put the University on notice of all claims arising out of this patent," and rejecting "the University['s] argu[ment] that its notice constitutes a question of fact that cannot be resolved on a Rule 12 motion to dismiss"); *see also* Cal. Civ. Code § 3426.6.

### D.     Illumina's Breach of Contract Claims Fail as a Matter of Law

Illumina's breach of contract claims against Drs. Eltoukhy and Talasaz fail as a matter of law because they are also barred by the statute of limitations and insufficiently pleaded.[12]

### 1.     Illumina's Breach of Contract Claims Are Untimely

Illumina's breach of contract claims against Drs. Eltoukhy and Talasaz are barred by California's four-year statute of limitations.  *See* Cal. Code Civ. Proc. § 337(a).  Statutes of limitations accrue upon the "occurrence of the last element essential to the cause of action." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 58 (N.D. Cal. 2020).  Illumina's contract claims are timely only if they accrued on or after March 17, 2018.  They did not.  Illumina's contract claims arise from alleged conduct that occurred a decade ago, well outside the limitations period.

The Complaint alleges Drs. Eltoukhy and Talasaz breached various "employment contracts and company policies" by "incorporat[ing] Guardant" in 2011.  (Compl. ¶¶ 122, 125, 133, 136.) The Complaint further alleges Dr. Eltoukhy breached these contracts by (1) "acting as an advisor, corporate agent, and fiduciary of Guardant while employed by Illumina" (*id.* ¶ 125);

---

[12] Illumina does not specify whether it brings these claims under Delaware or California law, but because the contracts were executed and performed in California by California residents and a California-domiciled corporation, and in the absence of any alleged forum-selection clause, California law applies.  *See generally Corning Inc. v. SRU Biosystems, LLC*, 292 F. Supp. 2d 583, 584 (D. Del. 2003) ("Delaware courts apply the most significant relationship test.").

(2) transferring "Illumina confidential and propriety information outside of Illumina" (*id.*; *see id.* ¶¶ 40-49, 53-57); (3) and "conribut[ing] to the development of Guardant's technology while an employee of Illumina" (*id.* ¶ 125).  This alleged conduct purportedly took place before Dr. Eltoukhy left Illumina in January 2013 (*id.* ¶ 63)—many years outside the limitations period. Illumina's contract claims based on Drs. Eltoukhy and Talasaz's purported misappropriation of proprietary information after their employment at Illumina ended (*id.* ¶¶ 125-26, 136-37) are also time-barred.  As discussed above, the allegedly misappropriated information was incorporated in patent applications filed in 2015 and 2016—meaning Illumina's claims expired, at latest, by 2020.

Even though every single purported breach occurred more than a decade ago, Illumina attempts to rescue its claims by saying it "first learned" of the alleged conduct it now claims are breaches in June 2019 and January 2020.  (Compl. ¶¶ 128, 139.)  This allegation is absurd. Illumina has been Guardant's supplier and close partner for nearly a decade: Illumina entered a supply agreement with Guardant in 2014 and has had visibility into Guardant's business and technology for many years.  Regardless, the allegations in the Complaint and publicly available information make clear that Illumina, at a minimum, should have known of the supposed breaches long before June 2019 and thus cannot invoke the discovery rule to revive its time-barred claims.

Under California law, the discovery rule only applies to "unusual breach of contract actions" where the breaches "are committed in secret" and "the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."  *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1233 (Cal. Ct. App. 2014).  The discovery rule cannot save Illumina's claims because any breach was "reasonably discoverable" by Illumina long ago: Illumina had access to Drs. Eltoukhy's and Talasaz's Illumina email accounts and Mr. Steemer's work emails (and, if he was still an employee, to him), and, with minimal diligence and a review of their email accounts, could have discovered any purported transfer of confidential information

nearly ten years ago.  Further, the alleged conduct underlying Illumina's contract claims was far

from "secret."  The fact that Guardant was incorporated in 2011 and that Drs. Eltoukhy and Talasaz

co-founded Guardant in 2012 was disclosed in SEC filings, in press releases, and in other public

sources.  (*See* note 1, *supra*.)  And as discussed above, the allegedly misappropriated information

was incorporated in patent applications that have been public since 2015 and 2016.  This publicly

available information put Illumina on—at the very least—inquiry notice of the alleged breaches,

and precludes Illumina from invoking the discovery rule to circumvent the statute of limitations

bar.  *See Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653-54 (9th Cir. 2016) (claims time-barred

where documents publicly available during limitations period discussed facts underlying claims);

*Vint v. Universal Studios Co. LLC*, 2021 WL 6618535, at *4 (C.D. Cal. Apr. 29, 2021) (contract

claims time-barred where alleged breach "was reasonably discoverable" due to "public release" of

film containing misappropriated ideas).  Illumina knew, or at a minimum, should have known long

before June 2019 of the alleged conduct that it now claims are breaches of contract.  Yet Illumina

sat on its rights and its contract claims are now expired.

### 2.    Illumina's Breach of Contract Claims Are Deficient Because Illumina Fails to Plead the Essential Terms of the Contracts

Even if Illumina's contract claims were timely, they still must be dismissed because they

are insufficiently pleaded.  To state a breach of contract claim, a plaintiff "must either attach a

copy of the contract to the complaint or plead the essential terms of the contract."  *Gross v.

Symantec Corp.*, 2012 WL 3116158, at *11 (N.D. Cal. July 31, 2012).  Illumina fails to state a

claim under this standard.  The Complaint fails to identify the essential terms of any contract Drs.

Eltoukhy and Talasaz purportedly breached and does not even say "how many agreements are at

issue."  *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014).  Rather,

the Complaint refers generally to "various employment contracts and company policies" Drs.

Eltoukhy and Talasaz supposedly agreed to abide by as part of their employment with Illumina. (Compl. ¶¶ 122, 133). These contracts "includ[ed]" at least four agreements: (1) a Proprietary Information and Invention Agreement ("PIIA"); (2) a Confidentiality Agreement; (3) a Code of Ethics; and (4) a Termination Certification. (*Id*. ¶ 18.) The Complaint does not distinguish among these contracts and points to a handful of alleged general terms without identifying the contract in which they are included or what alleged conduct by Drs. Eltoukhy and Talasaz breached each of those terms.[13] Without allegations setting forth the "material terms" of the contracts and "which obligations" Drs. Eltoukhy and Talasaz allegedly breached, Illumina's claims must be dismissed. *Langan*, 69 F. Supp. 3d at 979-80 (dismissing contract claim where the complaint leaves "no way for the Court [to] know even generally what the terms of the contract or contracts were"); *see AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (dismissing contract claim because plaintiff failed to "plead[] all of the essential terms" of the contracts).

### E.   This Court Lacks Personal Jurisdiction over Dr. Eltoukhy and Dr. Talasaz

Illumina's trade secret and contract claims against Dr. Eltoukhy and Dr. Talasaz independently fail for lack of personal jurisdiction. Drs. Eltoukhy and Talasaz are residents of California (Compl. ¶¶ 12-13), and none of the events giving rise to Illumina's claims are alleged to have occurred in Delaware. All Illumina pleads as a basis for this Court's exercise of personal jurisdiction over Drs. Eltoukhy and Talasaz is: (1) Guardant's incorporation in Delaware and their roles as directors and officers; and (2) their involvement in unrelated patent litigation with a

---

[13] *See*, *e.g.*, Compl. ¶ 19 (referencing general requirements of "[t]he employment agreements and company policies to which Eltoukhy and Talasaz agreed"); *id*. ¶ 67 (alleging that "[b]y taking those documents from Illumina, Eltoukhy violated his obligations under the employment contracts and company policies," but not specifying which contracts, policies, or terms were violated); *id*. ¶ 125 (stating that "Eltoukhy materially breached the PIIA, the Confidentiality Acknowledgement, and Code of Ethics, respectively, in numerous ways and at numerous times," and providing examples of conduct without specifying what terms or which contracts that conduct violated).

Massachusetts-based entity.  (*Id.* ¶ 15.)  Neither allegation can establish personal jurisdiction.

*First*, Guardant's incorporation in Delaware does not give rise to personal jurisdiction over its senior executives.  The fiduciary shield doctrine bars personal jurisdiction over an individual based on "acts performed by [that] individual in the individual's capacity as a corporate employee"—including incorporation of the entity and acting as a senior executive of that entity. *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503-04 & n.2 (D. Del. 2003) (applying fiduciary shield doctrine and holding that "the incorporation of . . . the Delaware corporations for which [the defendant] was President and CEO" was "insufficient to establish jurisdiction").

*Second*, Guardant's filing of a lawsuit in this District against Foundation Medicine, Inc. cannot establish personal jurisdiction over *Dr. Eltoukhy or Dr. Talasaz*.  Neither Dr. Eltoukhy nor Dr. Talasaz was a party to that litigation.  *See Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1169-70 (Del. Super. Ct. 2016) (even if organization's filing of counterclaims qualified as consent to personal jurisdiction, consent could not be "imputed" to CEO to find waiver of CEO's "defense to personal jurisdiction by this Court over *his* person").  Even if Drs. Eltoukhy and Talasaz were parties to it (and they were not), that litigation would not establish personal jurisdiction because it arose from unrelated conduct—Foundation Medicine's infringement of Guardant's patents. *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Off. Purveyor to the Imperial Ct. v. Heublein, Inc.*, 936 F. Supp. 177, 194 (D. Del. 1996) (filing of lawsuit in Delaware and incorporation in Delaware do not establish personal jurisdiction where those "acts have not caused the 'tortious injury' that forms the basis of [the] complaint").  The Court should dismiss the claims against Drs. Eltoukhy and Talasaz for lack of personal jurisdiction.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint.

OF COUNSEL:

Orin Snyder*
Jane M. Love*
Brian A. Rosenthal*
Grace E. Hart*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Greta B. Williams*
Sophia A. Vandergrift*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Trey Cox*
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100

*pro hac vice pending

Dated:  May 25, 2022

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Defendants Guardant Health, Inc.; Helmy Eltoukhy; and AmirAli Talasaz*

26