# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ILLUMINA, INC.,

        Plaintiff,

        v.

GUARDANT HEALTH, INC.; HELMY
ELTOUKHY; and AMIRALI TALASAZ,

        Defendants.

C.A. No. 22-334-VAC-CJB

---

## ILLUMINA, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER UNDER SECTIONS 1404 AND 1406

*Of Counsel*:

Christopher N. Sipes
Jeffrey H. Lerner
W. Kiersten Choi
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-6000

Jeffrey M. Davidson
Ellen Y. Choi
Kanu Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
(415) 591-6000

Yiye Fu
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4700

Dated: June 29, 2022

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Counsel for Plaintiff Illumina, Inc.*

# TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 2

II.  SUMMARY OF THE ARGUMENT ................................................................. 3

III.  STATEMENT OF FACTS ............................................................................ 4

IV.  ARGUMENT ........................................................................................ 6

    A.  Delaware Is a Proper Venue. ................................................................ 6

        1.  Legal Standard ........................................................................ 7

        2.  Venue Is Proper as to Guardant. ................................................. 7

        3.  Venue Is Proper as to Defendants Eltoukhy and Talasaz. ........................ 8

    B.  The Balance of Interests of Justice and Convenience to the Parties
       Disfavors Transfer Under § 1404. .......................................................... 9

        1.  Legal Standard ........................................................................ 9

        2.  The Private and Public Factors Show Delaware Is the Appropriate
            Forum. ................................................................................ 11

    C.  If Any Issue Exists as to the Appropriateness of Venue, Illumina Should
       Be Granted Venue-Related Discovery. ..................................................... 20

V.  CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIP Acquisition LLC v. iBasis, Inc.*,
  2012 WL 5199118 (D. Del. Oct. 19, 2012) .............................................................18

*Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*,
  2013 WL 5461876 (D. Del. Sept. 30, 2013) ...........................................................19

*Autodesk Can. Co. v. Assimilate, Inc.*,
  2009 WL 3151026 (D. Del. Sept. 29, 2009) ...........................................................19

*Bos. Sci. Corp. v. Nevro Cop.*,
  415 F. Supp. 3d 482 (D. Del. 2019).......................................................................20

*Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*,
  318 F. Supp. 2d 205 (D. Del. 2004).......................................................................20

*CNH Am. LLC v. Kinzenbaw*,
  2009 WL 3737653 (D. Del. Nov. 9, 2009) .............................................................12

*Cottman Transmission Sys., Inc. v. Martino*,
  36 F.3d 291 (3d Cir. 1994)....................................................................................7, 9

*Downing v. Globe Direct LLC*,
  2010 WL 2560054 (D. Del. June 18, 2010)............................................................19

*Express Mobile, Inc. v. Web.com Grp., Inc.*,
  2020 WL 3971776 (D. Del. July 14, 2020) ............................................................13

*Genedics, LLC v. Meta Co.*,
  2018 WL 417950 (D. Del. Jan. 12, 2018).....................................................16, 17, 19

*Guardant Health, Inc. v. Found. Med., Inc.*,
  C.A. No. 17-1616-LPS-CJB ............................................................................ *passim*

*Guardant Health, Inc. v. Found. Med., Inc.*,
  C.A. No. 20-1580-LPS...................................................................................2, 3, 5, 9

*Guardant Health, Inc. v. Pers. Genome Diagnostics, Inc.*,
  C.A. No. 17-1623-LPS-CJB ............................................................................ *passim*

*Hampton v. Navigation Cap. Partners, Inc.*,
  64 F. Supp. 3d 622 (D. Del. 2014)............................................................................7

*Hazout v. Tsang Mun Ting*,
  134 A.3d 274 (Del. 2016) ...............................................................................................15

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  163 F. Supp. 3d 118 (D. Del. 2016) ...........................................................................1, 14

*Int'l Bus. Machines Corp. v. Expedia, Inc.*,
  2019 WL 3322542 (D. Del. July 24, 2019) ....................................................................20

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012) (Stark, J.) .................................................... *passim*

*Javelin Pharms., Inc. v. Mylan Lab'ys Ltd.*,
  2017 WL 5953296 (D. Del. Dec. 1, 2017) ......................................................................20

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)........................................................................................ *passim*

*Kirschner Bros. Oil, Inc. v. Pannill*,
  697 F. Supp. 804 (D. Del. 1988) .....................................................................................14

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011)..................................................................................12, 14

*Micron Tech., Inc. v. Rambus Inc.*,
  645 F.3d 1311 (Fed. Cir. 2011)........................................................................................16

*Ministar, Inc. v. Laborde*,
  626 F. Supp. 142 (D. Del. 1985) .....................................................................................14

*Myers v. Am. Dental Ass'n*,
  695 F.2d 716 (3d Cir. 1982) ..............................................................................................7

*Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*,
  2009 WL 129740 (E.D. Pa. Jan. 13, 2009) .......................................................................7

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  2012 WL 4889438 (D. Del. Oct. 15, 2012) ...............................................................15, 16

*Praxair, Inc. v. ATMI, Inc.*,
  2004 WL 883395 (D. Del. Apr. 20, 2004)........................................................................11

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*,
  114 F. Supp. 3d 187 (D. Del. 2015) ................................................................................15

*Rocke v. Pebble Beach Co.*,
  541 F. App'x 208 (3d Cir. 2013) .....................................................................................20

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)..........................................................................10, 11

*Smith Int'l, Inc. v. Baker Hughes Inc.*,
  2016 WL 6122927 (D. Del. Oct. 19, 2016) ....................................................11

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)..........................................................................................13

*Toys "R" Us v. Step Two*,
  318 F.3d 446 (3d Cir. 2003)............................................................................20

*TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*,
  C.A. No. 21-1126-VAC-SRF ...................................................................*passim*

*Wacoh Co. v. Kionix Inc.*,
  845 F. Supp. 2d 597 (D. Del. 2012)..............................................................1, 19

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  2013 WL 867640 (D. Del. Mar. 8, 2013) .......................................................20

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  2020 WL 4335945 (D. Del. July 28, 2020) .....................................................17

**Statutes**

10 Del. C. § 3114 ...................................................................................................15

28 U.S.C. § 1391(b)(2) ...................................................................................3, 6, 7, 8

28 U.S.C. § 1404..........................................................................................3, 9, 10, 12

28 U.S.C. § 1406......................................................................................................3, 6

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:
  Jurisdiction and Related Matters* § 3826 (4th ed. 2008) ...............................6

Fed. R. Civ. P. 12(b)(3).........................................................................................3, 6

Fed. R. Civ. P. 12(g)(2)............................................................................................6

Fed. R. Civ. P. 12(h)(1)............................................................................................6

Fed. R. Civ. P. 26(f).................................................................................................3

U.S. Courts, *Federal Judicial Caseload Statistics Table C-5* (Mar. 31, 2021),
https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-
statistics/2021/03/31 ............................................................................................................18

Venue is proper in this Court. This is a case brought by a Delaware corporation (Illumina, Inc.) against a Delaware corporation (Guardant Health, Inc.) and two officers of that Delaware corporation who co-founded it and incorporated it in Delaware (Helmy Eltoukhy and AmirAli Talasaz). Illumina brought this suit where it, and Guardant, are at home. The "public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 (D. Del. 2012). Further, "[h]aving accepted the benefits of incorporation under the laws of the State of Delaware, 'a company should not be successful in arguing that litigation' in Delaware is 'inconvenient,' 'absent some showing of a unique or unexpected burden.'" *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 121 (D. Del. 2016). Defendants have made no such showing.

This Court has specific experience with the patents at issue, the relevant technology, and factual issues pertinent to Illumina's claims. Guardant filed multiple suits in this District asserting the very patents whose inventorship is at issue in this case. Defendants Eltoukhy and Talasaz actively participated in those lawsuits. Guardant is also presently asserting patents at issue in this case in another pending matter in this Court, and the patents' inventorship is being challenged in that case, too. *See TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-VAC-SRF, D.I. 76. Above all, Defendants' misappropriation of Illumina trade secrets and the breaches of contract by Guardant officers Eltoukhy and Talasaz are tied to Delaware and came to light through discovery taken in Guardant's prior lawsuits in Delaware.

There are thus significant efficiencies to litigation of this dispute in Delaware. This Court has construed elements of patents at issue. *See, e.g.*, *Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 17-1616-LPS-CJB ("*FMI I*"), D.I. 207. This Court has even addressed factual and legal issues closely relating to those in this case. For example, in prior litigation over patents at issue

here, this Court considered an inequitable conduct defense that Guardant deceptively omitted Eltoukhy from patents that he co-invented to evade his contractual obligation to assign his rights to Illumina. *See id.*, D.I. 431. This directly relates to Illumina's inventorship claim. In denying Guardant's motion for summary judgment on this defense, the Court evaluated the evidentiary record—evidence that likewise supports Illumina's inventorship claim—and explained how it showed issues of fact for a jury. *See id.* The Court further addressed Eltoukhy's efforts to conceal his wrongdoing by deleting tens of thousands of Illumina confidential documents in his possession during the pendency of Guardant's litigation in this District. *See, e.g.*, *id.*, D.I. 289. These facts bear directly on Illumina's claims regarding Defendants' misappropriation of Illumina's trade secrets and Eltoukhy's breach of contract, as well as Defendants' fraudulent concealment of their wrongdoing. Events tied to Delaware, including Eltoukhy and Talasaz's incorporation of Guardant in Delaware and Guardant's prior Delaware litigation, are at the heart of this matter.

Delaware is thus a proper and appropriate venue for this case. Guardant comes nowhere close to meeting its burden to justify transfer. Guardant presents no evidence, nor does it address the considerable judicial economy in litigating this case in Delaware based on this Court's familiarity with the patents, technology, and issues. Plaintiff's choice of forum is due considerable deference, and the balance of interests and convenience does not justify disturbing that choice here.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Illumina brings this suit against Guardant and its founders for misappropriating Illumina's trade secrets and breaching their obligations under their employment contracts with Illumina, and for correction of inventorship of certain patents. This case involves the inventorship of patents that Guardant has affirmatively asserted in *four* other cases in this District. *See FMI I*; *Guardant Health, Inc. v. Pers. Genome Diagnostics, Inc.*, C.A. No. 17-1623-LPS-CJB ("*PGDx*"); *Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 20-1580-LPS ("*FMI II*"); *TwinStrand*, C.A. No. 21-1126-VAC-

SRF. Further, central to this case are events that transpired during the course of Guardant's prior cases in this District, namely the *FMI I*, *PGDx*, and *FMI II* litigations, as described below.

On June 10, 2022, the parties held a Rule 26(f) conference. The parties plan to file a proposed scheduling order by July 11, in compliance with the Court's Standing Order No. 2022-VAC-1. Discovery is expected to commence expeditiously.

## II.    SUMMARY OF THE ARGUMENT

1.      Venue is proper in the District of Delaware as to all Defendants. Guardant did not move for dismissal under Rule 12(b)(3) for alleged improper venue, and its backdoor attempt to challenge venue in this Court in a motion to transfer styled under 28 U.S.C. § 1406 is procedurally improper. Even were the Court to consider the motion, Guardant failed to show venue is improper in this District. To the contrary, "a substantial part of the events" giving rise to Illumina's claims, including Eltoukhy's and Talasaz's breaches of their contracts with Illumina and Defendants' misappropriation of Illumina's trade secrets, occurred in Delaware. *See* 28 U.S.C. § 1391(b)(2).

2.      Defendants' motion to transfer under § 1404 should also be denied. Plaintiff Illumina is a Delaware corporation, as is Defendant Guardant. Eltoukhy and Talasaz incorporated Guardant in Delaware and remain officers of a Delaware corporation. Illumina has rational and legitimate reasons to pursue this case in Delaware, before a Court that has specific experience with patents, technology, and issues that are at the heart of this case. Guardant has repeatedly asserted patents at issue in this case in Delaware, and Eltoukhy and Talasaz actively participated in those prior cases. In fact, in the ongoing *TwinStrand* litigation, Guardant has once again asserted those same patents and put its ownership interests at issue in front of this Court. Defendants fail to show that the balance of interests of justice and convenience to the parties strongly favors transfer. Indeed, despite bearing the burden on a transfer motion, Defendants present no evidence at all. Defendants' § 1404 motion should be denied.

## III.    STATEMENT OF FACTS

Illumina is a Delaware corporation. D.I. 1 ¶ 4. Illumina researches, develops, and manufactures life science tools and integrated systems for genetic analysis. *Id.* ¶ 6.

Guardant is a Delaware corporation. *Id.* ¶ 10. Eltoukhy and Talasaz are former employees of Illumina who incorporated Guardant in Delaware, anonymously, in December 2011, while still employed by Illumina. *Id.* ¶¶ 26, 28, 63. Eltoukhy and Talasaz are both officers of Guardant. *Id.* ¶¶ 12-13.

As part of their employment at Illumina, Eltoukhy and Talasaz agreed to Illumina's company policies and entered into contracts in which, among other things, they agreed to assign to Illumina their inventions made while employed by Illumina that are related to Illumina's business, to protect Illumina's confidential and proprietary information, and to avoid conflicts of interest that could compromise their loyalty to Illumina. *Id.* ¶¶ 18-19.

While employed by Illumina and subject to these contractual obligations, Eltoukhy and Talasaz accessed confidential Illumina information and used that information to develop technology for Guardant, the Delaware corporation they had formed. *Id.* ¶¶ 22-23. In June 2012, Talasaz resigned from Illumina and immediately started working at Guardant. *Id.* ¶¶ 28-29. Eltoukhy continued his employment at Illumina until the end of 2012, and officially joined Guardant in January 2013. *Id.* ¶ 63. Unbeknownst to Illumina, while Eltoukhy was employed by Illumina, he acted as an agent for Guardant, made inventive contributions to patent applications assigned to Guardant, and misappropriated Illumina confidential information for use by Guardant. *Id.* ¶¶ 37-50, 57-62, 65-71. Not until after June 2019 did Illumina discover Eltoukhy's and Talasaz's wrongdoing, in connection with discovery in litigation Guardant brought in Delaware alleging infringement of patents also at issue in this case. *Id.* ¶¶ 75-78.

In 2017, Guardant filed patent infringement suits in this District against Foundation Medicine, Inc. and Personal Genome Diagnostics. *Id.* ¶ 75; *FMI I*, D.I. 1; *PGDx*, D.I. 1. Eltoukhy and Talasaz were directors and officers for Guardant at the time, and actively participated in these Delaware lawsuits. *See* D.I. 1 ¶¶ 12-13, 30, 37, 64, 80. Both Eltoukhy and Talasaz, for example, served as witnesses in depositions and submitted declarations. *See, e.g.*, *id.* ¶ 80; *FMI I*, D.I.s 83, 90, and 357 at Ex. 23.

In the *FMI I* litigation, Eltoukhy was found to be in possession of confidential Illumina documents—documents he had no authorization to possess. D.I. 1 ¶ 78. After being questioned in deposition, Eltoukhy proceeded to delete those documents from his personal files in an effort to conceal his misconduct. *See id.* ¶ 80; *FMI II*, D.I. 22 (FMI's Counterclaims Against Guardant), at ¶ 92. Proceedings then followed regarding spoliation by Guardant. *See FMI I*, D.I. 535.

It was when responding to a third-party subpoena in the *FMI I* litigation that Illumina discovered that Eltoukhy had taken to Guardant more than 51,000 Illumina documents. D.I. 1 ¶ 78. The materials Eltoukhy took included more than 1,400 documents marked as Illumina "COMPANY CONFIDENTIAL." *Id.* The discovery of his unauthorized retention and use of these documents exposed a fundamental breach of his agreements with Illumina. *See, e.g.*, *id.* ¶¶ 125, 136. Illumina also discovered that while employed at Illumina, Eltoukhy had solicited and received confidential Illumina materials from other Illumina employees for use by Guardant, and forwarded them to a personal Gmail account and then to Talasaz, who was working for Guardant. *Id.* ¶¶ 49, 81. Illumina further discovered that while employed by Illumina, Eltoukhy contributed to claimed inventions that were then assigned to Guardant, and even participated in drafting patent claims for those applications. *Id.* ¶¶ 54, 62. Illumina later discovered through the *FMI I* litigation that while Eltoukhy was employed by Illumina, he held himself out as an agent of Guardant. *See id.* ¶ 38.

## IV.    ARGUMENT

### A.    Delaware Is a Proper Venue.

There is no merit to Defendants' motion to transfer under § 1406. Venue is proper in this District, and Defendants have not shown otherwise.

As a threshold matter, Defendants' objections to venue are procedurally improper. Because "[a]n objection to venue is a personal privilege of the defendant, . . . the burden is on the defendant to assert an object[ion] in a proper and timely way." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3826 (4th ed. 2008). Defendants have not done so here. When, as in this case, a Rule 12 motion is filed, any defense or objection to venue must be included in the Rule 12 motion, Fed. R. Civ. P. 12(g)(2), and a failure to do so waives the defense, Fed. R. Civ. P. 12(h)(1); *see* 28 U.S.C. § 1406(b) (party waives its right to challenge venue under § 1406(a) if it "does not interpose timely and sufficient objection"). Despite filing an omnibus Rule 12 motion raising a panoply of defenses and exceeding the standard page limit by 25% (five pages), Defendants chose not to claim improper venue under Rule 12(b)(3). Defendants thus waived the argument that the Complaint should be dismissed for alleged improper venue. In tacking this defense onto a transfer motion, Defendants are attempting an end-run around the express requirements of the Federal Rules of Civil Procedure and the Local Rules' page limits.

Yet even if the Court were to look past the procedural defects, there is no merit to Defendants' venue objection. Defendants bear the burden to show venue is improper. Defendants, however, have not put forth any supporting evidence, let alone met their burden. To the contrary, venue is proper in Delaware under 28 U.S.C. § 1391(b)(2), because a "substantial part of the events" giving rise to Illumina's claims, including the incorporation of Guardant to receive and exploit Illumina's intellectual property, the Individual Defendants' breaches of their contracts with Illumina, and Defendants' misappropriation of Illumina's trade secrets, occurred in Delaware.

1.      Legal Standard

Defendants, as the parties seeking dismissal, bear the burden of proving venue is improper.

*See Hampton v. Navigation Cap. Partners, Inc.*, 64 F. Supp. 3d 622, 626 (D. Del. 2014); *see also*

*Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725-26 (3d Cir. 1982) (movant has the burden "to show

that venue is improper under *any* permissible theory") (emphasis added).

Venue is proper in any "judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A proper venue need not

"have [the] greatest connection to the cause of action or be the 'best forum' for the action," and

"multiple districts could be proper based on the operative facts." *Paul Green Sch. of Rock Music*

*Franchising, LLC v. Rock Nation, LLC*, 2009 WL 129740, at *2 (E.D. Pa. Jan. 13, 2009) (citing

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).

2.      Venue Is Proper as to Guardant.

Venue is proper in this District as to Guardant because this lawsuit involves misconduct

by, through, and on behalf of Guardant, a Delaware corporation. "[A] substantial part of the events"

giving rise to Illumina's claims against Defendants occurred in Delaware. 28 U.S.C. § 1391(b)(2).

Eltoukhy and Talasaz incorporated Guardant in Delaware as a vehicle to hold and use intellectual

property and other proprietary material they wrongfully funneled out of Illumina. D.I. 1 ¶¶ 15, 26,

50, 54-62. Guardant filed multiple suits in Delaware seeking to enforce patents that are based on

uncredited contributions of Illumina employees (including Eltoukhy). *See, e.g.*, *id.* ¶ 75. Most

recently, Guardant asserted counterclaims of infringement of patents to which Illumina should

have an ownership interest. *See TwinStrand*, C.A. No. 21-1126-VAC-SRF, D.I. 30. As set forth in

Illumina's Complaint, if not for Guardant's Delaware litigation, Illumina would not have

discovered that Guardant's CEO, Eltoukhy, had contributed to the conception of Guardant patents

while employed by Illumina and then had his named removed from the patent applications to cover his tracks, nor that Eltoukhy had misappropriated Illumina trade secrets to benefit Guardant. D.I. 1 ¶¶ 24, 40-49, 57-62, 78, 81. The Delaware litigation not only uncovered efforts by Defendants to conceal their wrongdoing and Eltoukhy's status as a co-inventor, but also revealed ongoing breaches and spoliation by Guardant. *Id.* ¶¶ 80-81. Thus, events in Delaware, including activities by Guardant in connection with Guardant's repeated assertion of patents at issue in this case in Delaware proceedings, are intertwined with and give rise to the claims here.

3.     Venue Is Proper as to Defendants Eltoukhy and Talasaz.

Venue is likewise proper as to Eltoukhy and Talasaz under § 1391(b)(2). While employed by Illumina, Eltoukhy and Talasaz accessed Illumina confidential information and resources to develop technology and incorporated a Delaware corporation, Guardant, to receive the intellectual property they misappropriated from Illumina. D.I. 1 ¶¶ 22-23, 26, 50, 57, 85. Eltoukhy and Talasaz breached their contractual obligations to devote their efforts to Illumina's business, to not compete with Illumina, and to avoid conflict of interest that could compromise their loyalty to Illumina in connection with their work for Guardant, a Delaware corporation. *Id.* ¶¶ 19, 26, 125, 136. Eltoukhy and Talasaz subsequently aided Guardant in obtaining patents using Illumina's intellectual property and assigned them to Guardant, rendering the Delaware corporation a vehicle for holding, using, and reaping benefits from the misappropriated information. *See id.* ¶¶ 15, 50.

Eltoukhy and Talasaz participated in Delaware litigation brought by Guardant over patents at issue in this case, and, as discussed above, the Delaware litigations are intertwined with and give rise to the claims in this case. Proceedings in those prior cases revealed for the first time that Eltoukhy transferred to Guardant and kept thousands of confidential Illumina documents, which he attempted to destroy after being deposed in a continued effort to conceal his misconduct. *Id.* ¶¶ 65, 75, 78, 80, 81; *FMI I*, D.I. 289 (Burke, M.J.) (ordering forensic discovery because "[i]t is

clear that Dr. Eltoukhy's deletion of these emails (some of which relate to, inter alia, Defendants['] inequitable conduct counterclaims), came after Dr. Eltoukhy was asked about the emails at a deposition"), D.I. 477 (FMI's Opening Brief in Support of Motion for Sanctions Based on Spoliation of Evidence); *FMI II*, D.I. 22 (FMI's Counterclaims Against Guardant) ¶¶ 92-94 ("[S]ometime following his April 2019 deposition, Dr. Eltoukhy intentionally deleted, without consulting counsel, ***every single pre-2014 email*** from his personal Gmail account on both his computer and Google's server . . . [which] w[ere] highly relevant to, and powerful evidence of, Dr. Eltoukhy's inequitable conduct before the USPTO.").

These events are not mere "contacts" or "tangential connections" with Delaware, as Defendants claim, but instead constitute a "substantial part" of the facts underlying this case. *See Cottman*, 36 F.3d at 294 (looking to the location of those "events or omissions giving rise to the claim"). Defendants' incorporation of Guardant in Delaware, Defendants' transfer to Guardant of intellectual property misappropriated by Eltoukhy and Talasaz, Guardant's filing of subsequent suits in Delaware on patents at issue in this case, and events in those cases that led to the discovery of the trade secret misappropriation and breaches of contract are all events and omissions giving rise to Illumina's claims. Indeed, the patent infringement lawsuits Guardant brought in this District were the very instrument through which Guardant sought to benefit from its misconduct. Thus, Delaware is a proper venue for adjudicating Illumina's claims against Eltoukhy and Talasaz.

**B.     The Balance of Interests of Justice and Convenience to the Parties Disfavors Transfer Under § 1404.**

1.     Legal Standard

The Third Circuit has emphasized that "the plaintiff's choice of venue should not be lightly disturbed," and "a transfer is not to be liberally granted." *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 750 (D. Del. 2012) (Stark, J.) (citation omitted). The "burden rests squarely

on the party seeking a transfer 'to establish that a balancing of proper interests weighs in favor of the transfer'" and "[t]hat burden is a heavy one: 'unless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail.'" *Id.* at 750-51; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (movant must establish that "the balance of convenience of the parties is *strongly* in favor of defendant") (emphasis added). Thus, on a motion under § 1404, a court must deny transfer "if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Intell. Ventures*, 842 F. Supp. 2d at 751 (citation omitted).

There is no "definitive formula or list of the factors to consider" for a § 1404(a) analysis. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Instead, a court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* Nonetheless, the Third Circuit has identified private and public interest factors to consider. The private interest factors include: (1) the "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties"; (5) "the convenience of the witnesses"; and (6) "the location of books and records." The public interest factors include: (7) "the enforceability of the judgment"; (8) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (9) "the relative administrative difficulty in the two fora resulting from court congestion"; (10) "the local interest in deciding local controversies at home"; (11) "the public policies of the fora"; and (12) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

Consideration of these facts shows that transfer would not be appropriate here.

2.     <u>The Private and Public Factors Show Delaware Is the Appropriate Forum.</u>

       a)    *Plaintiff's Forum Preference*

Illumina's choice of forum heavily weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed." *Shutte*, 431 F.2d at 25. Thus, "courts normally defer to a plaintiff's choice of forum," *Jumara*, 55 F.3d at 880, "as long as plaintiff has selected the forum for some legitimate reason." *Intell. Ventures*, 842 F. Supp. 2d at 753; *see also Smith Int'l, Inc. v. Baker Hughes Inc.*, 2016 WL 6122927, at *2 (D. Del. Oct. 19, 2016) ("The question, then, is not which venue is most convenient for a defendant but, rather, is the plaintiff's choice of venue so inconvenient to defendant that the interests of justice call out for a transfer.").

Defendants claim that Illumina's choice of forum should be discounted because, even though Illumina is a Delaware corporation, Delaware is somehow not Illumina's "home turf." D.I. 27 at 11. Defendants fail to cite the numerous cases in this District that have expressly rejected just such an argument. *See, e.g.*, *Intell. Ventures*, 842 F. Supp. 2d at 754 (Stark, J.) (collecting cases); *Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004). Contrary to Guardant's claims, Delaware is, by operation of law, the "home turf" of Delaware corporations. *See, e.g.*, *Intell. Ventures*, 842 F. Supp. 2d at 754.

In any event, Illumina's choice of Delaware as the forum for this litigation should be afforded deference because Illumina has "a legitimate and rational basis" for suing Defendants here. *See id.* This District has experience with patents and the technology at issue in this case. Guardant is a Delaware corporation and has brought multiple suits in Delaware asserting patents whose inventorship is at issue here. Indeed, the same inventorship question has been raised in Guardant's other Delaware cases, in the form of defenses seeking to hold the patents invalid or unenforceable. Key events relating to Illumina's claims against Defendants occurred in Delaware,

including the incorporation of Guardant in Delaware as a vehicle to receive and exploit Illumina's proprietary technology and intellectual property, the discovery of Eltoukhy's possession of Illumina confidential documents, Guardant's patent infringement suits filed in this Court on patents that should have been assigned to Illumina, as well as the misconduct Eltoukhy engaged in during those suits to conceal Defendants' wrongdoing. *See* D.I. 1 ¶¶ 75, 80; *FMI I*, D.I. 431; *PGDx*, D.I. 565. Further, Illumina's "decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) (citation omitted).

Defendants ignore the legitimate and rational bases for Illumina to bring suit in Delaware. They instead attempt to shoehorn this case into the scenario addressed in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011). *See* D.I. 27 at 12. For the same reasons explained by Judge Stark in *Intellectual Ventures*, *see* 842 F. Supp. 2d at 753, *Link_A_Media* is inapposite here. First, in that case the Federal Circuit directed an action pending in this District to be transferred because "the district court placed far too much weight on the plaintiff's choice of forum" where the plaintiff was not itself a Delaware entity and had no connection to Delaware. *Link_A_Media*, 662 F.3d at 1223-24. Here, in contrast, Illumina is a Delaware corporation. D.I. 1 ¶ 1; *see Intell. Ventures*, 842 F. Supp. 2d at 753. Second, Illumina does not ask the Court to make its choice of forum and the fact of Guardant's incorporation in Delaware "effectively dispositive of the transfer inquiry." *See Link_A_Media*, 662 F. 3d at 1223; *Intell. Ventures*, 842 F. Supp. 2d at 753. As demonstrated below, other factors weigh in favor of Delaware as well. Third, *Link_A_Media* did not "alter[] the fundamental fact that Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized,

case-by-case consideration of convenience and fairness.'" *Intell. Ventures*, 842 F. Supp. 2d at 753 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Thus, Plaintiff's choice of Delaware as the forum for a suit between Delaware corporations involving patents previously litigated in Delaware, including issues litigated in those cases and raised in the current *TwinStrand* litigation in Delaware, weighs heavily in favor of keeping the case here. Indeed, even the cases Defendants cite recognize that a plaintiff's forum choice "is *still the most important factor* when a plaintiff has a principal place of business outside Delaware" even where (unlike in this case) the plaintiff "has no connection to Delaware other than its choice to sue here, or other than its choice to sue here and its Delaware incorporation." *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020) (emphasis added).

### b) Defendants' Forum Preference

Despite the fact that Defendants have themselves repeatedly brought patent infringement suits and counterclaims in Delaware on patents whose inventorship is at issue in this case, Defendants now profess a preference to litigate this particular case elsewhere, in the Northern District of California. By definition a party bringing a transfer motion prefers to litigate somewhere else, but Defendants are wrong to the extent they suggest that their preference should weigh equally with or more heavily than Illumina's. *See* D.I. 27 at 11. "Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference." *Intell. Ventures*, 842 F. Supp. 2d at 755; *Express Mobile*, 2020 WL 3971776, at *2.

### c) Where the Claim Arose

Eltoukhy and Talasaz's incorporation of Guardant in Delaware is closely related to Defendants' wrongdoing that gives rise to Illumina's claims. In addition, events in Delaware resulted in Illumina's discovery of the wrongdoing, as discussed above. Defendants' assertion that "[a]ll of the alleged conduct underlying Illumina's claims occurred solely in California" is untrue.

D.I. 27 at 11. While Defendants cite a line of cases that caution against giving dispositive weight to the fact that a defendant is incorporated in Delaware, they disregard that in those cases the defendant's incorporation in Delaware had no connection to the disputes. *See Link_A_Media*, 662 F.3d at 1224 (Delaware had no ties to the dispute); *Ministar, Inc. v. Laborde*, 626 F. Supp. 142, 146 (D. Del. 1985) (same); *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988) (Delaware's only connection to acts giving rise to lawsuit was by virtue of nationwide sale of stock). Here, Eltoukhy and Talasaz's incorporation of Guardant as a Delaware corporation, while still employed at Illumina, as an entity to which they transferred intellectual property misappropriated from Illumina, is highly relevant. Defendants' also disregard the Delaware litigation they brought that revealed the wrongdoing.

This factor should be deemed neutral.

### d) Convenience of Parties

The convenience of parties is determined "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. "[A] long line of decisions from this District . . . make plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intell. Ventures*, 842 F. Supp. 2d at 756. "[H]aving accepted the benefits of incorporation under the laws of the State of Delaware," the company would need to show "a unique or unexpected burden" to claim inconvenience. *Hologic*, 163 F. Supp. 3d at 121. Defendants have not done so.

Defendants have presented no evidence that litigating in Delaware would impose "a unique or unexpected burden." *See id.* Guardant has filed multiple suits in Delaware on patents whose inventorship is at issue in this case. *See, e.g.*, *FMI I*, D.I. 1; *PGDx*, D.I. 1. Eltoukhy and Talasaz

chose to incorporate Guardant in Delaware, remain officers of the Delaware corporation, and have actively participated in litigations that Guardant has repeatedly filed in Delaware. *See* D.I. 1 ¶¶ 12-13, 26, 75, 80. Defendants already produced documents in Delaware litigation that will be highly relevant here. Indeed, it was in Guardant's prior Delaware litigation that Eltoukhy was discovered to wrongfully possess confidential Illumina documents and tried to conceal evidence of wrongdoing by deleting those documents. *Id.* ¶¶ 78, 80. Thus, this factor is neutral.

To the extent Defendants urge transfer to "keep together the claims against Guardant and the individual defendants" because they claim Eltoukhy and Talasaz are not subject to personal jurisdiction in Delaware, D.I. 27 at 13, their argument fails because this Court has personal jurisdiction over Eltoukhy and Talasaz. As explained in Illumina's opposition to Defendants' motion to dismiss, the Court has personal jurisdiction over these Defendants, including under Delaware's non-resident director and officer consent statute, 10 Del. C. § 3114. In particular, there is a "close nexus between the claims against the corporation and those against the officer and director," and "the claims against the officer and director involve conduct taken in his official corporate capacity." *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 279 (Del. 2016). In any event, the claims against Guardant would be proper in this Court even if the distinct claims against Eltoukhy and Talasaz were litigated elsewhere.

e) *Convenience of Witnesses*

The convenience of the witnesses is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "The sole fact that a witness is outside of this Court's subpoena power provides little insight into whether that witness will be actually *unavailable* for trial." *Pragmatus AV, LLC v. Yahoo! Inc.*, 2012 WL 4889438, at *10 (D. Del. Oct. 15, 2012); *see also Intell. Ventures*, 842 F. Supp. 2d at 758; *Quest Integrity USA,*

*LLC v. Clean Harbors Indus. Servs., Inc.*, 114 F. Supp. 3d 187, 191 (D. Del. 2015). Without "some concrete evidentiary showing that these individuals would be unlikely to testify," mere speculation as to potential unavailability of certain individuals is given little weight. *Pragmatus*, 2012 WL 4889438, at *10.

Defendants have presented no evidence that any witness will actually be unavailable for trial. At most, Defendants speculate that in Delaware they might not be able to take testimony from Frank Steemers, Jay Flatley, and Mostafa Ronaghi, who are based in California. D.I. 27 at 13-14. Although these individuals are no longer employees of Illumina, they could participate voluntarily or "their testimony can always be compelled through a deposition, by service of a notice of deposition and enforcement of such by a court with jurisdiction over" them. *Intell. Ventures*, 842 F. Supp. 2d at 758. Defendants' failure to present evidence to suggest they will be unwilling to testify without having to be subpoenaed is itself significant. *Pragmatus*, 2012 WL 4889438, at *10.

The absence of evidence as to third-party witnesses who would be unavailable for trial in Delaware means this factor does not meaningfully favor either side and is neutral. *See Genedics, LLC v. Meta Co.*, 2018 WL 417950, at *7 (D. Del. Jan. 12, 2018); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011) (convenience of witness did not favor either forum where "most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware"). Courts' growing facility with remote testimony makes this factor even less meaningful.

f)      *Location of Relevant Evidence*

The location of evidence is relevant only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. This factor is commonly given little weight, as

technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 2020 WL 4335945, at *6 (D. Del. July 28, 2020) (citation omitted). Here, it is apparent that the relevant records could readily be produced in Delaware. Guardant has filed multiple patent litigations in Delaware over patents at issue here, and is currently litigating those patents in counterclaims in this District. Thus, many materials relevant to this case have already been produced in Delaware, and could easily be produced again by Guardant. Defendants failed to present any evidence suggesting otherwise. Therefore, this factor is neutral, but in any event should not have a significant impact in the overall calculus. *See Genedics*, 2018 WL 417950, at *8.

g) *Enforceability of Judgment*

As discussed in Illumina's opposition to Defendants' motion to dismiss, this Court has personal jurisdiction over the Individual Defendants. Therefore, this Court has the authority to order specific performance of Eltoukhy's and Talasaz's contractual obligations to assign to Illumina their ill-gotten patents. This factor is neutral.

h) *Practical Considerations Making Trial Easier, Quicker, or Cheaper*

"Practical considerations" weigh strongly against transfer. There have been multiple cases in this Court over patents at issue here, and the Court has experience with the technology at issue. Magistrate Judge Burke was heavily involved in adjudicating discovery disputes that overlap with issues in this case and claim construction of patents whose inventorship is at issue in this case. *See, e.g.*, *FMI I*, D.I.s 5, 191, 207, 212, 239, 260, 289, 343, 431, and 437; *PGDx*, D.I.s 4, 261, 354, 359, 389, 402, 429, 470, 565, and 578 (orders and reports and recommendations on discovery disputes, claim construction, and dispositive motions). For example, Judge Burke addressed issues relating to the concealment of wrongful acts by Eltoukhy and Guardant, such as Eltoukhy's spoliation of

evidence, which forms a part of facts underlying this suit. *See FMI I*, D.I. 289 (ordering discovery related to Eltoukhy's spoliation). As another example, Judge Burke recommended denying Guardant's motion for summary judgment on an inequitable conduct defense concerning Guardant's deceptive omission of Eltoukhy as a named inventor on Guardant patents to evade his obligation to assign inventions to Illumina, concluding based on a detailed analysis of the evidence that a reasonable jury could conclude that Eltoukhy was a joint inventor. *FMI I*, D.I. 431. This issue overlaps considerably with Illumina's inventorship claim. Further, another case involving the same patents—*TwinStrand*, C.A. No. 21-1126-VAC-SRF—is before this Court, and the same inventorship issue may be litigated in that case. Permitting this case to remain in Delaware "minimize[s] costs to the judicial system as a whole, by requiring that only one court become familiar with the relevant technology." *AIP Acquisition LLC v. iBasis, Inc.*, 2012 WL 5199118, at *5 (D. Del. Oct. 19, 2012).

Defendants ignore these significant efficiencies based on the prior Delaware litigations. Defendants mistakenly assert a potential cost savings in transferring this case to the Northern District of California, yet as a public interest factor the analysis must focus on "the broader public costs of transfer," *id.*, which clearly favor keeping the case in Delaware rather than have an entirely new court learn facts that are already familiar to this District.

### i) Relative Docket Congestion

This factor is neutral. According to the latest Federal Judicial Caseload Statistics, the caseload per judge in this District is higher than that in the Northern District of California, but the median length of time to disposition of a case is shorter in Delaware than in Northern California.[1]

---

[1] *See* U.S. Courts, *Federal Judicial Caseload Statistics Table C-5* (Mar. 31, 2021), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2021/03/31.

Although there remains a judicial vacancy in this District, this Court has established procedures in place to ensure that this case will progress without delay.

<em>j)</em>       <em>Local Interest in the Controversy and Public Policy of the Fora</em>

"Delaware has a strong interest in adjudicating disputes among its corporate citizens." *Intell. Ventures*, 842 F. Supp. 2d at 760; *see also Autodesk Can. Co. v. Assimilate, Inc.*, 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations."). Further, "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *Wacoh*, 845 F. Supp. 2d at 604. Thus, Defendants' contention that Delaware has "no particular interest or public policy at stake," D.I. 27 at 17, is plainly incorrect.

Defendants have not shown that this case "has any type of outsized resonance to the citizens of the Northern District of California, nor that its outcome would significantly impact that district," which would be the required showing to cause this factor to "meaningfully favor one party or the other." *Genedics*, 2018 WL 417950, at *9; *cf. Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, 2013 WL 5461876, at *4 (D. Del. Sept. 30, 2013) (this factor "strongly" favored transfer to California where the case involved contract interpretation involving "an issue of first impression" in that state); *Downing v. Globe Direct LLC*, 2010 WL 2560054, at *4 (D. Del. June 18, 2010) (this factor favored transfer to Massachusetts where the case concerned "the conduct of [a] Massachusetts government agency, and therefore the case [had] the potential to impact the public policy of as well as, to some extent, the taxpayers of Massachusetts").

Thus, this factor either weighs in favor of Delaware or is neutral.

The inventorship claims here are brought under federal patent law, and this is not a diversity case. Although there are state-law claims, this factor should be given only minimal weight. This District has encountered and adjudicated cases involving California law, including the California Uniform Trade Secrets Act ("CUTSA"), in the past, and it is equipped to do so here as well. *See, e.g.*, *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 318 F. Supp. 2d 205 (D. Del. 2004) (adjudicating CUTSA claims); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 867640 (D. Del. Mar. 8, 2013) (same); *Bos. Sci. Corp. v. Nevro Cop.*, 415 F. Supp. 3d 482 (D. Del. 2019) (same).

### C. If Any Issue Exists as to the Appropriateness of Venue, Illumina Should Be Granted Venue-Related Discovery.

Guardant has not shown transfer is appropriate, much less necessary. Indeed, Guardant's failure to present any facts supporting its motion should be sufficient to deny the motion. If any question remains, however, Illumina should be permitted discovery to develop a factual record. *See Javelin Pharms., Inc. v. Mylan Lab'ys Ltd.*, 2017 WL 5953296, at *3 (D. Del. Dec. 1, 2017) ("[I]n a difficult case, the Court should permit venue-related discovery, to allow the adversarial process to aid the Court in making a fact-specific decision on a well-developed factual record."). The Third Circuit has instructed that "unless a plaintiff's claim is 'clearly frivolous,' jurisdictional discovery should be allowed," *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212 (3d Cir. 2013) (citing *Toys "R" Us v. Step Two*, 318 F.3d 446, 456 (3d Cir. 2003)), and courts apply the same standard to venue discovery, *see, e.g.*, *Int'l Bus. Machines Corp. v. Expedia, Inc.*, 2019 WL 3322542, at *3 (D. Del. July 24, 2019).

## V. CONCLUSION

For these reasons, Defendants' motion to dismiss or transfer to the Northern District of California should be denied.

Dated: June 29, 2022

Respectfully submitted,

*Of Counsel*:

/s/ *Steven J. Balick*
Steven J. Balick (# 2114)
Andrew C. Mayo (# 5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box. 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Christopher N. Sipes
Jeffrey H. Lerner
W. Kiersten Choi
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-6000

Jeffrey M. Davidson
Ellen Y. Choi
Kanu Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
(415) 591-6000

*Counsel for Plaintiff Illumina, Inc.*

Yiye Fu
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4700