**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ILLUMINA, INC.,

        Plaintiff,

        v.

GUARDANT HEALTH, INC.; HELMY
ELTOUKHY; and AMIRALI TALASAZ,

        Defendants.

C.A. No. 22-334-VAC-CJB

**ILLUMINA, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

*Of Counsel*:

Christopher N. Sipes
Jeffrey H. Lerner
W. Kiersten Choi
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-6000

Jeffrey M. Davidson
Ellen Y. Choi
Kanu Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
(415) 591-6000

Yiye Fu
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4700

Dated: June 29, 2022

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Counsel for Plaintiff Illumina, Inc.*

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.  SUMMARY OF ARGUMENT ........................................................................................ 3

III. STATEMENT OF FACTS .............................................................................................. 3

IV.  ARGUMENT .................................................................................................................. 5

    A.  Legal Standard ...................................................................................................... 5

    B.  Illumina's Claims Are Timely. .............................................................................. 5

        1.  Illumina's Trade Secret Claims Are Timely. .............................................. 6

        2.  Illumina's Breach of Contract Claims Are Timely. .................................... 9

    C.  This Court Has Personal Jurisdiction Over the Individual Defendants. ............... 11

        1.  Personal Jurisdiction Exists Under the Nonresident Director and
            Officer Consent Statute. ............................................................................. 11

        2.  Personal Jurisdiction Also Exists Under the Long-Arm Statute. ............... 15

        3.  In the Alternative, the Court Should Permit Jurisdictional
            Discovery. .................................................................................................. 15

    D.  Illumina's Claims Are Properly Pleaded. ............................................................. 16

        1.  The Complaint States a Claim for Correction of Inventorship. ................. 16

            a)  The Complaint Plausibly Alleges Contribution. ........................... 16

            b)  The Complaint Plausibly Alleges Collaboration. ......................... 18

            c)  Defendants Cannot Overcome the Complaint's Allegations
               By Ignoring Them. ........................................................................ 19

        2.  The Complaint Plausibly Alleges Illumina's Ownership Interest. ........... 20

        3.  Guardant's Patent Applications Provide No Basis for Dismissal. ............. 21

        4.  The Complaint States a Claim for Misappropriation of Trade
            Secrets. ...................................................................................................... 21

        5.  The Complaint States Claims for Breach of Contract. ............................. 24

V.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*,
  78 F. Supp. 3d 572 (D. Del. 2015) ....................................................................... 11

*Acrisure of California, LLC v. SoCal Commercial Insurance Services, Inc.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) .................................................. 23, 24

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
  871 A.2d 428 (Del. 2005) .................................................................................... 15

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................................... 25

*Apr. Enters, Inc. v. KTTV*,
  147 Cal. App. 3d 805 (1983) ................................................................................. 9

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ......................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 5, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 5, 25

*Blackhawk Network Inc. v. SL Card Company Inc.*,
  – F. Supp. 3d –, 2022 WL 704032 (D. Ariz. Mar. 9, 2022) ............................. 19, 20

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  873 F. Supp. 2d 1192 (N.D. Cal. 2012) ................................................................. 6

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
  916 F.3d 1350 (Fed. Cir. 2019) .................................................................... *passim*

*Const. Party of Penn. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) .................................................................................. 5

*Diodes, Inc. v. Franzen*,
  260 Cal. App. 2d 244 (Cal. Ct. App. 1968) .......................................................... 22

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ......................................................................... 5, 9, 10

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998)................................................................16

*In re Fruehauf Trailer Corp.*,
  250 B.R. 168 (D. Del. 2000)....................................................................9

*Gen. Bedding Corp. v. Echevarria*,
  947 F.2d 1395 (9th Cir. 1991) ................................................................7

*Guardant Health, Inc. v. Found. Med., Inc.*,
  C.A. No. 17-1616-LPS-CJB, 2020 WL 6742965 (D. Del. Nov. 17, 2020)............................22

*Guardant Health, Inc. v. Found. Med., Inc.*,
  C.A. No. 17-1616-LPS-CJB, D.I. 431 ................................................1, 10, 16, 22

*Hazout v. Tsang Mun Ting*,
  134 A.3d 274 (Del. 2016) ................................................................12, 13, 14

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) ................................................................22, 24

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor
  to the Imperial Court v. Heublein, Inc.*,
  936 F. Supp. 177 (D. Del. 1996) ................................................................15

*LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*,
  2018 WL 1559936 (Del. Ch. Mar. 28, 2018)....................................................14

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3d Cir. 2009)................................................................5, 11

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)................................................................ *passim*

*PBA Local 183 v. Cnty. of Essex*,
  2019 WL 5168688 (D.N.J. Oct. 15, 2019)....................................................6

*Regents of University of California v. Chen*,
  2017 WL 3215356 (N.D. Cal. July 26, 2017)................................................8

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)................................................................6

*So. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
  181 F.3d 410 (3d Cir. 1999)................................................................6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003)................................................................15

*Turner v. Prince Georges Cnty. Pub. Sch.*,
  694 F. App'x 64 (3d Cir. 2017) ....................................................................11

*United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*,
  2015 WL 4718998 (N.D. Cal. Aug. 7, 2015) ..........................................25

*Van Buskirk v. Carey Canadian Mines, Ltd.*,
  760 F.2d 481 (3d Cir. 1985)...........................................................................6

*Wiggins v. Physiologic Assessment Services, LLC*,
  138 A.3d 1160 (Del. Super. Ct. 2016) ........................................................15

**Statutes**

10 Del. C. § 3104(c)..............................................................................................2, 15

10 Del. C. § 3114 ...................................................................................... *passim*

Cal. Civ. Code § 3426.6...........................................................................................6

California Code of Civil Procedure § 337(a) .........................................................9

# I.     NATURE AND STAGE OF PROCEEDINGS

Helmy Eltoukhy and AmirAli Talasaz were Illumina employees who agreed, and were legally obligated, to use their full efforts and Illumina's resources for the company's benefit. Instead, after covertly founding Guardant while employed by Illumina, they took more than 50,000 Illumina documents, used Illumina's confidential information to advance Guardant's business, used the contributions of Illumina employees (including Eltoukhy himself) to conceive of patents that they assigned to Guardant, and used Illumina resources to draft patent claims for Guardant. Eltoukhy even solicited a confidential technical presentation from another Illumina employee and forwarded it to his personal email, and then to Talasaz at Guardant.

Defendants affirmatively concealed their misconduct. They falsely certified they had not taken Illumina information; used personal emails for their misappropriation; and changed inventorship on patent applications to disguise Eltoukhy's role. Their actions went undetected for years until discovery in a lawsuit Guardant filed in this District revealed the truth. Eltoukhy then tried to delete evidence of tens of thousands of confidential documents he took from Illumina, prompting the court to grant relief for spoliation. Defendants are well aware that the Complaint's allegations are supported by prior findings of the court and state claims for relief. Defendants now advance scattershot arguments disregarding these detailed allegations and applicable law.

<u>Limitations</u>. Illumina's claims are timely. There is no challenge to the timeliness of the inventorship claim (Count I). As to the challenged claims, the Complaint's allegations show the causes of action for trade secret misappropriation and breach of contract did not accrue until after June 2019, when Illumina discovered through the *Guardant v. FMI* litigation that Eltoukhy and Talasaz had misappropriated Illumina's materials and breached their agreements. The Complaint was filed well within the statutes of limitations applicable to these claims.

<u>Jurisdiction</u>. As the Complaint alleges, the Court has personal jurisdiction under 10 Del. C. § 3114 over Eltoukhy and Talasaz, whose actions on behalf of Guardant in Delaware form the crux of this case. Eltoukhy and Talasaz purposefully availed themselves of Delaware law, including by incorporating Guardant in Delaware as the vehicle for their misappropriation of Illumina's intellectual property and by pursuing patent litigation in Delaware to reap the benefits of that misappropriation. Defendants' motion wholly failed to address this ground for jurisdiction, and waived any argument that they are not subject to personal jurisdiction under § 3114. Personal jurisdiction also exists under Delaware's long-arm statute, 10 Del. C. § 3104(c).

<u>Pleading specificity.</u> Each of Illumina's claims for correction of inventorship, trade secret misappropriation, and breach of contract is well-pleaded and supported by factual allegations that plausibly show entitlement to relief. Guardant distorts the Complaint's allegations and demands a level of pleading specificity that has never been required and is untenable under the circumstances.

Finally, Illumina is compelled to address Guardant's introduction and overheated rhetoric, which do not concern the merits and appear intended to distract from them. Guardant attempts to portray this suit as retaliation for its testimony concerning an unrelated corporate transaction. It is no such thing. To construct its false narrative, Guardant claimed in its opening brief that Illumina never mentioned its concerns to Guardant before filing suit. That is untrue. Illumina in fact raised these issues at the highest levels within Guardant nearly a year before filing this suit, well before the testimony for which Guardant now claims retaliation. Illumina therefore asked Guardant to retract its inaccurate statements. Instead, Guardant replaced its original filing on the docket with a new paper keeping the same misstatements and the same false narrative but adding a footnote that Illumina's "pre-litigation approach" to Guardant somehow does not constitute "express[ing] any concerns or rais[ing] a claim." The same lack of candor pervades Guardant's briefing.

## II.    SUMMARY OF ARGUMENT

The Court should deny Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), for the following reasons:

1.    Illumina's trade secret and breach of contract claims did not accrue until at least June 2019 and thus are timely under the applicable statutes of limitations. Illumina's claims are also timely because Defendants' fraudulent concealment tolled the statutes of limitations.

2.    Personal jurisdiction exists over Eltoukhy and Talasaz due to their actions for and on behalf of Guardant, and because they repeatedly and purposefully availed themselves of the resources of the state of Delaware including its law, governmental agencies, and courts.

3.    Illumina's Complaint states proper claims for relief. As to inventorship, the Complaint explains how former Illumina employees are co-inventors of Guardant patents and assigned to Illumina their ownership interest in those patents. As to trade secret misappropriation, the Complaint identifies the trade secrets at a level appropriate for a pleading. And as to breach of contract, the Complaint identifies the specific contracts and essential terms violated by Defendants.

## III.    STATEMENT OF FACTS

Guardant is a corporation founded by two former Illumina employees. D.I. 1 ¶ 26. Eltoukhy worked at Illumina from 2008 to 2013, and Talasaz worked at Illumina from 2009 to 2012. *Id.* ¶¶ 17, 28, 31, 63. During that time, both Eltoukhy and Talasaz had access to Illumina trade secrets and resources, including confidential and proprietary information, materials, and the know-how of its employees. *See id.* ¶¶ 21-25, 40-48, 57, 65-66. Both were bound by employment agreements and company policies to devote their efforts to Illumina's business, to not compete with Illumina, to avoid conflicts of interest that could compromise their loyalty to Illumina, to assign to Illumina inventions made during their employment and related to Illumina's business, to protect Illumina's

confidential and proprietary information, to not take or use Illumina resources or property for their own benefit, and to return Illumina materials upon termination of employment. *Id.* ¶ 19.

In violation of those terms, Eltoukhy and Talasaz laid the groundwork for Guardant's business and patent portfolio while still employed by Illumina, including by working on projects for Guardant's benefit instead of Illumina's benefit; drafting patent claims for Guardant using Illumina resources and the contributions of Illumina employees (including Eltoukhy); soliciting confidential and proprietary information, materials, and know-how from other Illumina employees; funneling Illumina's confidential and proprietary information and materials out of the company through their personal emails; and absconding with tens of thousands of confidential Illumina documents upon leaving for Guardant. *See id.* ¶¶ 20-27, 32-62, 65-71.

Defendants used the contributions of Illumina employees—including then-employee Eltoukhy—as the foundation for Guardant's patent portfolio, and then took steps to conceal the provenance of those patents by omitting (and in Eltoukhy's case, removing) the names of Illumina employees as co-inventors. *See, e.g.*, *id.* ¶¶ 40-50, 54-62, 74. They also falsely certified to Illumina that they had not taken Illumina's materials when they departed. *See id.* ¶¶ 18, 70-71, 126, 137.

It was only after Guardant filed suit in this District to enforce its patents against other companies that discovery revealed the truth of Defendants' conduct, prompting those companies to serve third-party discovery requests on Illumina in April and May 2019 that led to Illumina's eventual discovery of the wrongdoing in or after June 2019. *Id.* ¶¶ 75-78. Even after those revelations, between August and November 2019, Defendants continued to try to cover their tracks. Eltoukhy's name as an inventor was removed from more Guardant patent applications, *id.* ¶ 79, and he deleted or attempted to delete information, including confidential Illumina documents, from his personal files after being deposed in connection with one of Guardant's lawsuits, *id.* ¶ 80.

## IV. ARGUMENT

### A. Legal Standard

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "does not require 'detailed factual allegations,'" only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the sufficiency of a complaint, a court "must accept [the plaintiff's] factual allegations as true and consider those facts in the light most favorable to [the plaintiff]." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). This applies to motions challenging the facial sufficiency of a complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *accord Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 911 (3d Cir. 2021) (trade secret misappropriation); *cf. CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1357 (Fed. Cir. 2019) (correction of inventorship).

At the pleading stage, a plaintiff needs only to "establish a prima facie case of personal jurisdiction," and "in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

### B. Illumina's Claims Are Timely.

Guardant's motion to dismiss Illumina's trade secret and breach of contract claims on statute of limitations grounds has no merit. The "Third Circuit has indicated that motions to dismiss under Rule 12(b)(6) are generally disfavored when they are based on statute of limitations arguments because 'the applicability of the statute of limitations often involves questions of fact

for the jury.'" *PBA Local 183 v. Cnty. of Essex*, 2019 WL 5168688, at *11 (D.N.J. Oct. 15, 2019). As is the case here, "there are usually factual questions as to when a plaintiff discovered or should have discovered the elements of its cause of action, and thus '[D]efendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'" *So. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410 (3d Cir. 1999) (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985)).

The Complaint alleges Illumina did not discover Defendants' trade secret misappropriation and breaches of contract before June 2019, and supports the reasonable inference that Illumina did not have reason to discover them before then. Thus, Illumina's claims did not accrue until at least June 2019. Defendants do not contest that claims that accrued in June 2019 are timely, and do not come close to meeting their "heavy burden" to show a time bar as a matter of law.

### 1. Illumina's Trade Secret Claims Are Timely.

Illumina discovered Guardant's misappropriation following June 2019. *E.g.*, D.I. 1 ¶¶ 75-78. Under the California Uniform Trade Secrets Act, "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. Illumina filed suit on March 17, 2022—less than three years after discovering the misappropriation, and well within the limitations period. This is not the unusual circumstance where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The Complaint shows that Illumina's claims are timely.

A cause of action for trade secret misappropriation does not accrue "until the plaintiff discovers, or has reason to discover," the underlying facts. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 873 F. Supp. 2d 1192, 1217 (N.D. Cal. 2012), *on reconsideration in part*, 2012

WL 12925716 (N.D. Cal. July 8, 2012). As the Complaint alleges, Illumina did not discover the misappropriation until after June 2019, when it was responding to third-party discovery requests in connection with patent litigation filed by Guardant in this District. *E.g.*, D.I. 1 ¶¶ 75, 78.

Defendants assert that Illumina *should* have discovered their misappropriation earlier based on the publication of Guardant's patents. D.I. 30 at 20. But their argument is inconsistent with the Complaint's allegations and the reasonable inferences they support, and thus fails. Defendants disregard, among other things, their acts of concealment. *E.g.*, D.I. 1 ¶¶ 39-49, 65-74. The patents do not on their face reveal that Defendants misappropriated Illumina's trade secrets. *See Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1398 (9th Cir. 1991) (issuance of patent did not give plaintiff reason to suspect misappropriation because "[t]he patent could instead be the result of an independent discovery"). Indeed, the patents hide the identities of rightful inventors by failing to name Eltoukhy or any other Illumina employee as a joint inventor. D.I. 1 ¶¶ 72-74, 79, 85, 90. And Guardant identifies nothing from the face of the patents that purportedly would have revealed to Illumina that its trade secrets had been misappropriated.

Defendants also cite no precedent supporting their argument that Guardant's patents put Illumina on notice of Defendants' misappropriation. Their cited cases either concern trade secrets specifically disclosed in patents or do not address trade secrets at all. Defendants cite *Wang v. Palo Alto Networks, Inc.* to argue that publication of a patent "place[s] those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication." 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014). In *Wang*, however, the plaintiff was on notice because "it [was] crystal clear . . . that the contents of [a] patent application revealed the alleged trade secrets." *Id.* That is not the case here. Likewise, in *Klang v. Pflueger*, the plaintiff itself admitted its trade secrets had been disclosed. 2014 WL 12587028, at *5 (C.D.

Cal. Oct. 2, 2014) ("Klang alleges that the '023 Patent and the '790 Patent disclose the invention . . . ."). Here, in contrast, Illumina has made no such admission and Defendants have identified no Illumina trade secrets specifically disclosed in Guardant's patent publications.

Defendants' reliance on *Regents of University of California v. Chen*, 2017 WL 3215356 (N.D. Cal. July 26, 2017) is also inapt; that case did not even involve a claim of trade secret misappropriation and the court had no occasion to address whether the patents at issue revealed any trade secrets. Since the Complaint establishes that Illumina did not discover or have reason to discover Defendants' misappropriation until after June 2019, its trade secret claims are timely.

Even if, for the sake of argument, publication of Guardant's patents could somehow be said to put Illumina on constructive notice of the misappropriation, Illumina's claims would still be timely because Defendants' fraudulent concealment tolled the statute of limitations. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013) ("[F]raudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale.").

As the Complaint alleges, Defendants' deception prevented Illumina from discovering their misappropriation before June 2019. *E.g.*, D.I. 1 ¶¶ 39, 45, 49, 67-74, 79. Eltoukhy and Talasaz concealed that they were working for Guardant while employed by Illumina. *Id.* ¶¶ 39, 45, 50. Defendants concealed that Eltoukhy worked on the subject matter claimed in Guardant's patents and contributed to the conception of those patents while employed by Illumina. *Id.* ¶¶ 43, 44, 45, 50. Eltoukhy concealed that he transferred confidential Illumina material outside the company. *Id.* ¶¶ 45, 49. He even used a non-Illumina email to transmit Illumina's confidential information to Guardant, then falsely certified that he returned all Illumina materials upon leaving the company when in fact he kept tens of thousands of Illumina documents. *Id.* ¶¶ 65, 69, 71. Guardant removed Eltoukhy as a named inventor from patent applications before they issued as patents, preventing

Illumina from having reason to suspect he contributed as an inventor to these patents while employed by Illumina and having access to confidential Illumina material. *Id.* ¶¶ 72-74, 79.

Illumina's pleading is more than sufficient to satisfy this Court's "lenient approach to the application of Rule 9(b)" to "issues that may have been concealed by defendants." *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 (D. Del. 2000) ("[A] complaint need not plead the date, place or time of the fraud, so long as it uses an alternative means of injecting precision and some measure of substantiation into their allegations of fraud.") (internal quotations omitted).

## 2. Illumina's Breach of Contract Claims Are Timely.

Illumina's breach of contract claims are likewise timely, as they did not accrue until Illumina discovered Eltoukhy's breaches of contract after June 2019, D.I. 1 ¶ 128, and Talasaz's breaches of contract in or around January 2020, *id.* ¶ 139. The same concealment and secretive behavior that prevented Illumina from having reason to investigate misappropriation also prevented it from having reason to discover Defendants' breaches of contract. In accordance with California Code of Civil Procedure § 337(a) and the discovery rule, Illumina's claims were brought within four years of these discoveries. *See Apr. Enters, Inc. v. KTTV*, 147 Cal. App. 3d 805, 830-31 (1983) (finding "that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed" and "defendants should not be allowed to knowingly profit from their injuree's ignorance" when applying the discovery rule in a breach of contract action).

Guardant urges the Court to disregard as "absurd" Illumina's factual allegations of when the breaches were discovered. D.I. 30 at 22. In other words, Guardant disagrees with Illumina. But a court "must accept [the plaintiff's] factual allegations as true and consider those facts in the light most favorable to [the plaintiff]." *Doe v. Princeton*, 30 F.4th at 342. Guardant's disagreement also happens to be baseless. It claims "Illumina has been Guardant's supplier and close partner for

nearly a decade . . . and has had visibility into Guardant's business and technology for many years" (D.I. 30 at 22), but that does not suggest Illumina knew or should have known of these breaches of contract, and conveniently ignores Defendants' acts of concealment. To the contrary, the fact that Guardant repeatedly interacted with Illumina without coming clean *supports* tolling.

Second, Guardant claims "any breach was 'reasonably discoverable' by Illumina long ago." *Id.* The Complaint's allegations, and reasonable inferences from them, are to the contrary, as discussed above. Guardant argues "Illumina had access to Drs. Eltoukhy's and Talasaz's Illumina email accounts and Mr. Steemer's work emails (and, if he was still an employee, to him), and, with minimal diligence and a review of their email accounts, could have discovered any purported transfer of confidential information nearly ten years ago." *Id.* at 22-23.[1] But Guardant identifies no reason why Illumina should have scoured through tens of thousands of emails in accounts of three specific employees with no outward indication of wrongdoing.

Nor was the consequence of Eltoukhy's and Talasaz's breaches apparent before June 2019. Illumina may have been aware that Guardant had been founded or possessed patents, but, due to the same secretive efforts that prevented Illumina from having reason to suspect that Guardant obtained its patents through misappropriation, it had no reason to believe that these events flowed from concealed actions that violated agreements between Illumina and its employees.[2]

---

[1] Contrary to Guardant's brief, there is nothing "purported" about this improper transfer; Guardant admitted to it in the *FMI* litigation, and returned the documents to Illumina. Guardant's present attempt to cast doubt on this established fact is revealing.

[2] Guardant also argues that "the discovery rule only applies to 'unusual breach of contract actions' where the breaches 'are committed in secret' and 'the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time.'" D.I. 30 at 22. Guardant cites only *NBCUniversal Media, LLC v. Superior Court*, which held "the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." 225 Cal. App. 4th 1222, 1233 (2014). That decision did not hold that the discovery rule *only* applies to such breaches. In any event, Illumina has alleged the breaches were in fact

For these reasons and those described above in section IV.B.1, the statute of limitations for Illumina's contract claims would also have been tolled by Defendants' fraudulent concealment.

## C. This Court Has Personal Jurisdiction Over the Individual Defendants.

It is undisputed that this Court has personal jurisdiction over Guardant, a Delaware corporation. The Court likewise has personal jurisdiction over Eltoukhy and Talasaz, as officers of a Delaware corporation, under 10 Del. C. § 3114. Defendants ignore § 3114, the nonresident director and officer consent statute. Their challenges to personal jurisdiction have no merit.

Under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Turner v. Prince Georges Cnty. Pub. Sch.*, 694 F. App'x 64, 66 (3d Cir. 2017). Unless an evidentiary hearing is held, "the plaintiff[] need only establish a prima facie case of personal jurisdiction" and is "entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." *Metcalfe*, 566 F.3d at 330.

To determine the existence of personal jurisdiction over a nonresident, the court evaluates (1) whether state law offers a basis for exercising personal jurisdiction and (2) whether there are "minimum contacts" between the defendant and the forum state, such that exercising jurisdiction over the defendant comports with due process. *See Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015).

### 1. Personal Jurisdiction Exists Under the Nonresident Director and Officer Consent Statute.

Defendants claim that the Court lacks personal jurisdiction over Eltoukhy and Talasaz because their incorporation of Guardant in Delaware was an act they performed in their capacities

---

committed in secret, and *NBCUniversal* therefore actually supports Illumina's position. *See, e.g.*, D.I. 1 ¶¶ 39, 45, 49, 68-74, 79, 80.

as corporate officers. D.I. 30 at 25. However, Defendants ignore altogether that personal jurisdiction exists over Eltoukhy and Talasaz under the nonresident director and officer consent statute because of actions they took for and on behalf of Guardant, as expressly pleaded in the Complaint. *See* D.I. 1 ¶ 15; 10 Del. C. § 3114. Having failed to challenge this ground of personal jurisdiction, Defendants waived any challenge to it.[3] Indeed, it would be fundamentally unfair for Defendants to contest personal jurisdiction under § 3114 for the first time in a reply brief.

Section 3114 provides that Delaware courts have personal jurisdiction over a non-resident officer in (1) "all civil actions or proceedings brought in [Delaware] … against such corporation, in which such officer is *a necessary or proper party*"; or (2) "in any action or proceeding against such officer for violation of a duty in such capacity." 10 Del. C. § 3114(b) (emphasis added). An officer is a "necessary" party if the officer has "rights which must be ascertained and settled before the rights of the parties to the suit can be determined." *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 289 (Del. 2016). An officer is a "proper" party if the officer has a "separable legal interest in the suit." *Id.* at 289-90. In either case, "the statute requires that there be a close nexus between the claims against the corporation and those against the officer and the director, and that the claims against the officer and director involve conduct taken in his official corporate capacity." *Id.* at 279.

*Hazout* is illustrative. The plaintiff sued a director of a Delaware corporation headquartered in Canada, where the director also resided. *Id.* at 280. The plaintiff had lent the corporation money based on representations made by the director, who had negotiated with the plaintiff on the corporation's behalf. *Id.* at 281-82. When the representations turned out to be false and the director refused to return the money, the plaintiff filed suit. *Id.* at 282. The director moved to dismiss for

---

[3] *See* D. Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

lack of personal jurisdiction. The Delaware Supreme Court found personal jurisdiction because the director "ha[d] a tangible legal interest in the matter that [was] separate from [the corporation's] interest, and because the claims against him [arose] out of the same facts and occurrences as the claims against [the corporation]—alleged wrongs that [he] committed in his capacity as the company's President and CEO." *Id.* at 292. This comported with due process because he had "purposefully availed himself of certain duties and protections under [Delaware] law" via his position, and the claims against him "involve[d] his actions in his official capacity." *Id.* at 292-93.

As in *Hazout*, personal jurisdiction exists here under § 3114. As the Complaint alleges, Eltoukhy and Talasaz acted in their capacities as officers or directors of Guardant when they misappropriated Illumina trade secrets and breached their contracts with Illumina. While employed by Illumina, Eltoukhy served as a member of the Board of Directors of Guardant. D.I. 1 ¶ 37. Despite his employment by Illumina and in breach of contractual obligations, Eltoukhy acted as a corporate agent and fiduciary of Guardant. *Id.* ¶ 38. In June 2012, while an Illumina employee, Eltoukhy solicited confidential information from another Illumina employee and forwarded it through his personal Gmail account to Talasaz, another director of Guardant, for use in Guardant's business. *Id.* ¶¶ 40-47, 81. Eltoukhy also sent other confidential Illumina material to Talasaz, and drafted and sent patent claims for Guardant from his Illumina email to his personal Gmail while employed by Illumina. *Id.* ¶¶ 53, 55. When Eltoukhy left Illumina to become Guardant's Chief Executive Officer, he took with him, without Illumina's knowledge or permission, more than 51,000 Illumina emails, 1,400 of which were marked as "COMPANY CONFIDENTIAL." *Id.* ¶¶ 63-66, 78. Eltoukhy and Talasaz applied for patents reflecting contributions by Illumina employees (including then-employee Eltoukhy) but assigned the patents assigned Guardant. *Id.* ¶¶ 50, 57, 85. To conceal their wrongdoing, they removed Eltoukhy's name as an inventor on the

applications. *Id.* ¶¶ 74, 79. Each of these actions was undertaken to benefit Guardant.

Guardant then filed multiple lawsuits in Delaware seeking to enforce patents obtained through the misconduct of Eltoukhy and Talasaz, who actively participated in that litigation. For example, Eltoukhy (Guardant's CEO) and Talasaz (Guardant's President) were each deposed as Guardant's corporate representatives; shortly after his deposition, Eltoukhy deleted confidential Illumina documents from his files to try to conceal his misconduct. *Id.* ¶ 80.

Both Eltoukhy and Talasaz are thus "proper" parties here. As in *Hazout*, they have tangible legal interests in the action separate from those of Guardant. *See* 134 A.3d at 292; *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, 2018 WL 1559936, at *9 (Del. Ch. Mar. 28, 2018). Further, the claims against them "arise out of the same facts and occurrences as the claims against" Guardant, including Eltoukhy's and Talasaz's breaches of their contracts with Illumina, misappropriation of Illumina trade secrets, and efforts to conceal their actions—all in their capacities as Guardant's directors or officers. *See Hazout*, 134 A.3d at 292. Defendants cannot deny the "close nexus" between the claims against Guardant and those against Eltoukhy and Talasaz. *Id.* at 279.

In addition, Eltoukhy is a "necessary" party. *See id.* at 289. His rights as a co-inventor of patents whose inventorship is challenged must be resolved before the rights of Illumina and Guardant can be determined. Defendants admit as much. They even argue Eltoukhy must be joined as a party to this case for Illumina to obtain specific performance from Eltoukhy to assign the patents to Illumina pursuant to his contractual obligations. D.I. 27 at 15-16.

Personal jurisdiction over Eltoukhy and Talasaz under § 3114 is consistent with due process. As in *Hazout*, Eltoukhy and Talasaz served as directors and officers of a Delaware corporation; indeed, as founders, they *chose* to incorporate in Delaware. They thus "purposefully availed [themselves] of certain duties and protections under [Delaware] law," *Hazout*, 134 A.2d at

292, and should "reasonably anticipate" being sued in Delaware, *see AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 440 (Del. 2005).

## 2. Personal Jurisdiction Also Exists Under the Long-Arm Statute.

Personal jurisdiction over Eltoukhy and Talasaz also exists under Delaware's long-arm statute. *See* 10 Del. C. § 3104(c). Eltoukhy and Talasaz caused Illumina "tortious injury" in Delaware through their incorporation of Guardant, their transfer to Guardant of Illumina's intellectual property, and their participation in lawsuits filed by Guardant in Delaware to reap benefits from their misappropriation. Defendants' attempt to downplay the importance of Guardant's multiple Delaware lawsuits misses the mark. First, *Wiggins v. Physiologic Assessment Services, LLC*, 138 A.3d 1160 (Del. Super. Ct. 2016) is distinguishable, because (1) Guardant initiated the suits here rather than filing counterclaims (*id.* at 1169-70); and (2) unlike in *Wiggins*, Eltoukhy and Talasaz actively participated in the litigation (*see* D.I. 1 ¶ 80). Second, Guardant's suits in Delaware did not arise from "unrelated conduct." *See* D.I. 30 at 25. Unlike in *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 194 (D. Del. 1996), these suits were part of Defendants' ongoing misappropriation causing "tortious injury" that the Complaint seeks to remedy. *See id.*

## 3. In the Alternative, the Court Should Permit Jurisdictional Discovery.

If any doubt exists as to the Court's jurisdiction, Illumina should be permitted jurisdictional discovery. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"). Where, as here, "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.*

**D.    Illumina's Claims Are Properly Pleaded.**

Defendants strain to contend that the Complaint fails to state a plausible claim for relief as to any claim. Defendants' Rule 12(b)(6) arguments are meritless. The Complaint's detailed and thorough allegations are more than sufficient at the pleading stage.

**1.    The Complaint States a Claim for Correction of Inventorship.**

As set forth in the Complaint, Illumina employees—including then-employee Eltoukhy— "contributed to the conception and reduction to practice" of the patents in suit and should be named as inventors on those patents. *See* D.I. 1 ¶¶ 85-99. Since those employees assigned their rights to Illumina, Illumina should be declared at least a co-owner of those patents. *See id.* ¶¶ 100-02.

In a prior suit Guardant filed in this District over patents at issue here, the court explained that a reasonable jury could conclude that Guardant deceptively omitted Eltoukhy's name from patents he co-invented in order to evade his contractual assignment of his rights to Illumina. *Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 17-1616-LPS-CJB ("*FMI*"), D.I. 431. Defendants omit this background, just as they ignore the Complaint's allegations. Defendants cannot credibly say they lack notice of Illumina's inventorship claim or that it fails to state a claim. Their assertion that the Complaint does not allege Illumina employees contributed to the patents at issue or collaborated with the named inventor (D.I. 30 at 10-12) is meritless.

**a)    The Complaint Plausibly Alleges Contribution.**

To state a claim for correction of inventorship under § 256 under a joint inventorship theory, a complaint must allege that each joint inventor "contribute[d] to the invention's conception." *CODA*, 916 F.3d at 1358. At the same time, a joint inventor "need not 'make the same type or amount of contribution' to the invention nor contribute to every claim—a contribution to one claim is enough." *Id.*; *cf. Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456,

1460 (Fed. Cir. 1998) ("[T]he critical question for joint conception is who conceived . . . the *subject matter* of the claims at issue" (emphasis added)). The Complaint more than meets these standards.

The Complaint alleges that Illumina employees, including at least Eltoukhy (while employed by Illumina) and Steemers, contributed to the conception of claim elements in Guardant's patents. *See* D.I. 1 ¶¶ 40-51, 53-62, 90-96. For example, Eltoukhy contributed to the conception and reduction to practice of at least the following:

- "[S]equencing extracellular polynucleotides from a bodily sample and mapping sequence reads derived from the sequencing onto a reference sequence in claim 10 of the '743 patent, normalizing the numbers of families mapping to predefined regions to each other in claim 24 of the '995 patent, using barcode sequences at least 5 nucleotides in length in claim 1 of the '731 patent, and detecting the presence or absence of a copy number variation in claim 1 of the '810 patent";

- "[V]ariants comprising indels or copy number variations in claim 20 of the '880 patent and selecting a treatment based on a cell-free tumor mutation profile in claim 23 of the '152 patent"; and

- "[S]electing a sample from the group consisting of blood, plasma, serum, urine, saliva, mucosal excretions, sputum, stool, and tears in claim 2 of the '858 patent."

*Id.* ¶¶ 93-95; *see id.* ¶¶ 21-24, 72-74. Many of the patents at issue (e.g., '731, '743, and '810 patents) claim a priority date in 2012, meaning their claimed inventions necessarily were conceived while Eltoukhy was an Illumina employee. *See id.* ¶¶ 52, 60, 63. Eltoukhy even drafted patent claims for Guardant while an Illumina employee, which supports the inference that he contributed to their conception. *Id.* ¶ 54. The Complaint further identifies contributions by Steemers' "includ[ing], for example, applications of error correction methods and communication theory ideas, including in grouping sequence reads into families and then collapsing those reads into a single consensus sequence from the sequence reads in the families." *Id.* ¶ 90. The Complaint' allegations "allow the reasonable inference that [Eltoukhy, Steemers, and other Illumina employees] made a more-than-insignificant contribution to the conception of at least one claim of each of the [a]lleged [j]ointly

[i]nvented [p]atents." *CODA*, 916 F.3d at 1359.

### b) The Complaint Plausibly Alleges Collaboration.

For joint inventorship, a complaint must allege "some quantum of collaboration," which need not be knowing or intentional; it can be based on "some element of joint behavior, such as . . . one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting," or "the inventors having 'some open line of communication during or in temporal proximity to their inventive efforts.'" *Id.* Allegations that one inventor shared information related to the technology, and another inventor subsequently misappropriated that information in developing the technology, suffice to show collaboration. *See id.* at 1359-60.

The Complaint more than adequately pleads collaboration. For example, Eltoukhy collaborated with Talasaz while employed by Illumina on technology Defendants used to build Guardant's patent portfolio, and passed along information reflecting contributions of other Illumina employees. *See, e.g.*, D.I. 1 ¶¶ 21-25, 32-38, 40-51, 53-62. In addition to the know-how and ideas of Illumina employees Eltoukhy shared with Guardant personnel, Defendants accessed confidential and proprietary Illumina information and materials, including by soliciting technical documents from other Illumina employees, and used the information and materials for Guardant's benefit. *See id.* ¶¶ 22-25, 40-62, 65-66. Eltoukhy drafted patent claims for Guardant, while an Illumina employee and making use of Illumina resources, information and materials—though Defendants removed his name from patent applications to try to disguise his role. *See id.* ¶¶ 54-62, 74, 79. Even the Complaint's allegations explaining how Eltoukhy and Talasaz used their positions at Illumina to take and use confidential Illumina information as the groundwork for Guardant's intellectual property portfolio, and then took steps to conceal their actions, would at minimum "allow the reasonable inference that the collaboration requirement [is] satisfied as to the

[a]lleged [j]ointly [i]nvented [p]atents." *CODA*, 916 F.3d at 1359-60.

### c) Defendants Cannot Overcome the Complaint's Allegations By Ignoring Them.

Defendants ignore most of the Complaint's allegations concerning joint inventorship and demand minute detail that has never been required to state a claim. Defendants assert with no authority that Illumina must specify in a complaint who created the Steemers slides and other misappropriated materials. *See* D.I. 30 at 11-12. But the salient point at this stage is that the materials belonged to Illumina and were the product of Illumina personnel's work. Defendants also ignore the import of the fact that Eltoukhy—himself, personally—worked on drafting patent claims using Illumina resources. They assert, again with no authority, that "[d]rafting patent claims does not equal or even imply conception" because "wordsmithing patent claims does not make patent lawyers and prosecutors into inventors." *Id.* at 11. That logic does not apply to Eltoukhy, who is not a patent lawyer or prosecutor. In any event, the allegations support a reasonable inference that Eltoukhy did contribute to conception, and a complaint need do no more.

Defendants cite a single out-of-district decision—*Blackhawk Network Inc. v. SL Card Company Inc.*, – F. Supp. 3d –, 2022 WL 704032 (D. Ariz. Mar. 9, 2022)—to argue that, "[a]s other district courts have found," the details demanded by Defendants are required to state a claim for correction of inventorship. *See* D.I. 30 at 10-12. *Blackhawk* says nothing of the sort. In that case, the plaintiff failed to adequately plead contribution by its employees because the complaint "contain[ed] only three cursory allegations": that its employees (1) "disclosed the operation" of the products at issue, (2) "contributed to the conception of one or more claims of" the patents at issue, and (3) "worked collaboratively" with the named inventor. 2022 WL 704032, at *8. The extensive allegations of Illumina's Complaint are nothing like those in *Blackhawk.*

The Complaint identifies specific concepts and elements underlying the patents at issue;

explains that Eltoukhy and Talasaz accessed and used Illumina information and materials relevant to those concepts and inventions to lay the groundwork for Guardant while still employed by Illumina; details how Talasaz and Eltoukhy joined Guardant right after leaving Illumina, exfiltrating thousands of confidential Illumina documents in the process; and recounts how Guardant attempted to conceal Eltoukhy's role as an inventor while employed by Illumina, as well as his misappropriation on behalf of Guardant of materials embodying the work of other Illumina employees. *See* D.I. 1 ¶¶ 21-79, 90-95. This is nothing like the conclusory allegations in *Blackhawk* and is more than enough to plead joint inventorship. *See CODA*, 916 F.3d at 1359-60.

### 2. The Complaint Plausibly Alleges Illumina's Ownership Interest.

Defendants next assert the Complaint does not provide enough detail about Illumina's ownership interest in the patents in suit because it purportedly "never alleges Dr. Eltoukhy—or anyone else—conceived of the inventions claimed in the [patents in suit] while . . . employed by Illumina." D.I. 30 at 14-16. That is incorrect. The Complaint alleges Eltoukhy and other Illumina employees "contributed to the conception" of the patents in suit "while employed by Illumina," *see, e.g.*, D.I. 1 ¶¶ 90-96, and alleges specific dates showing conception occurred while Eltoukhy was employed by Illumina, *see, e.g.*, *id.* ¶¶ 52, 60. Defendants ignore these allegations and assert that "contribut[ion] to the conception" is not "conception" for inventorship purposes. *See* D.I. 30 at 14-15. This is a non-sequitur. The Complaint alleges Eltoukhy is a *joint inventor*, not the sole inventor. Precedent is clear that "a joint inventor must *contribute* to the invention's conception," which is precisely what the Complaint alleges. *CODA*, 916 F.3d at 1358 (emphasis added).

Defendants also criticize the Complaint for "fail[ing] to attach or adequately describe" the agreements establishing Illumina's ownership interest. D.I. 30 at 8-9. This criticism is unfounded. The Complaint specifically describes the agreements and policies through which then-employee

Eltoukhy assigned his rights to Illumina. *E.g.*, D.I. 1 ¶¶ 18-19, 122-27, 133-38.

Defendants nevertheless claim "Illumina does not even allege Mr. Steemers signed an employment agreement (or any other agreement) with Illumina requiring him to assign inventions to Illumina." D.I. 30 at 15. To the contrary, the Complaint alleges: that Illumina's "employment agreements and company policies" required employees "to assign to Illumina their inventions made while employed by Illumina that are related to Illumina's business" (D.I. 1 ¶ 19); that Steemers was an Illumina employee when he contributed to the conception of the inventions in question (*id.* ¶¶ 90, 96); and that Illumina's claim for correction of inventorship is based in part on the assignment of rights by Steemers (*id.* ¶¶ 100, 102). These are sufficient allegations that Steemers assigned his rights to the patents in suit to Illumina. *See generally Oakwood*, 999 F.3d at 904 (a complaint need only state a plausible claim for relief when its allegations and "all reasonable inferences" are construed "in a light most favorable to the [plaintiff]").

### 3. Guardant's Patent Applications Provide No Basis for Dismissal.

Finally, Defendants' argument that Illumina "cannot pursue ownership of a yet-to-issue patent application" under § 256 (D.I. 30 at 9, 16-17) is misplaced. Illumina seeks no such relief under § 256. Defendants cite paragraph 82 of the Complaint (*id.* at 17), which merely observes Defendants' misappropriation is ongoing, including via pending applications. Illumina expressly states it seeks such relief on those applications only "if issued as patents." D.I. 1 at 28-29 (A-C).

### 4. The Complaint States a Claim for Misappropriation of Trade Secrets.

The Complaint details Defendants' misappropriation of confidential and proprietary materials containing Illumina's trade secrets. *See* D.I. 1 ¶¶ 40-53, 57-61, 65-71, 104-17. Again, these allegations should come as no surprise to Defendants; the facts emerged in Guardant's own prior lawsuit in this District. And when these facts came to light, Eltoukhy tried to delete Illumina

material from his personal files, prompting the issuance of an order granting relief on "a very serious spoliation motion." *See id.* ¶ 80; *Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 17-1616-LPS-CJB, 2020 WL 6742965, at *4 (D. Del. Nov. 17, 2020); *FMI*, D.I. 289 (Dec. 10, 2019).

Defendants nevertheless contend the Complaint fails to state a claim for trade secret misappropriation under a theory that it does not sufficiently identify the trade secrets at issue. *See* D.I. 30 at 17-19. As Defendants admit, however, a complaint "need not 'spell out the details of the trade secret to avoid' dismissal." *Oakwood*, 999 F.3d at 906 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (Cal. Ct. App. 1968)); *see* D.I. 30 at 18 ("[C]ourts do not require so much detail as to disclose the trade secret itself."). Identification of information laying out "research and development, test methods and results . . . and other discoveries," including "example[s] [of] particular document[s] . . . containing trade secrets," is sufficient to put Defendants "on notice of the trade secret information that is at issue." *Oakwood*, 999 F.3d at 907; *accord, e.g.*, *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) (allegations sufficient even though they "left open the possibility of expanding its identifications later. [Plaintiff's] burden is only to identify at least one trade secret with sufficient particularity").

The Complaint identifies the trade secrets at issue with more than "enough specificity to place [Defendants] on notice of the bases for the claim[s] being made against [them]." *Oakwood*, 999 F.3d at 906. For example, the Complaint alleges that Defendants misappropriated an internal Illumina presentation marked "COMPANY CONFIDENTIAL—INTERNAL USE ONLY" that contained "confidential Illumina information concerning random coding improvement in error rate for use in genetic sequencing to obtain better accuracy from fewer sequence reads." D.I. 1 ¶¶ 40-50, 105. It also alleges that Defendants misappropriated Illumina materials containing "Illumina's confidential and proprietary error correction methods and communication theory ideas, including

methods for grouping sequence reads into families and then collapsing those reads into a single consensus sequence from the sequence reads in the families." *Id.* ¶ 57; *see id.* ¶¶ 53-61, 106. It then explains how those trade secrets are relevant to Guardant's patents. *See id.* ¶¶ 57-61.

Defendants assert that "Illumina relies on generalizations and catch-phrases" (D.I. 30 at 18) while ignoring every part of the Complaint showing otherwise. For example, Defendants characterize paragraph 57 as a "vague[]" allegation about "error correction methods and communication theory ideas" (*see id.*) but omit the rest of that paragraph, which specifies "methods for grouping sequence reads into families and then collapsing those reads into a single consensus sequence from the sequence reads in the families." *See* D.I. 1 ¶ 57. Similarly, Defendants claim "Illumina . . . fails to even allege how these purported trade secrets derive independent economic value or whether they were subject to reasonable measures to maintain their secrecy" (D.I. 30 at 18-19), but ignore where the Complaint does just that. For example, Illumina alleges it "invested substantial resources in research and development" for its trade secrets and "has at all relevant times taken reasonable measures to maintain the secrecy of its confidential, proprietary, and trade secret information," including through "stringent security measures" like "requiring employees to sign various agreements and company policies and to return any Illumina information in their possession upon termination of employment." D.I. 1 ¶¶ 48, 107-11.

None of Defendants' citations support dismissal. Defendants mischaracterize *Acrisure of California, LLC v. SoCal Commercial Insurance Services, Inc.*, 2019 WL 4137618 (C.D. Cal. Mar. 27, 2019), as standing for the proposition that the word "including" is an impermissible "catchall" when describing trade secrets. *See* D.I. 30 at 18. What *Acrisure* actually rejected was not the use of the word "including" but the use of "a generic list of different types of information," such as "programs," "projects," or "contracts," "with no indication of what *specific* programs, projects, or

contracts are at issue." 2019 WL 4137618, at *3; *cf. InteliClear*, 978 F.3d at 653. Unlike in *Acrisure*, Illumina's Complaint identifies specific documents, concepts, and methods and describes them by reference to the underlying technology. *See* D.I. 1 ¶¶ 40-61, 105-07.

For the same reason, Defendants' arguments (D.I. 30 at 18) find no support in *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018), which rejected alleged trade secrets identified only with "broad, categorical" terms like "source code, customer lists and customer related information," or *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017), which rejected "high-level overview[s]" of alleged trade secrets like "data on the environment in the stratosphere." The allegations here are far more specific and give Defendants ample "notice of the trade secret information that is at issue." *See Oakwood*, 999 F.3d at 907.

### 5.    The Complaint States Claims for Breach of Contract.

Eltoukhy and Talasaz breached their employment agreements and Illumina's company policies, including the Proprietary Information and Invention Agreement, Confidentiality Acknowledgement, Code of Ethics, and Termination Certificate. D.I. 1 ¶¶ 18, 122-42. The Complaint identifies these agreements, their essential terms, activities that constituted breaches, and terms of the agreements that were breached. *Id.* ¶¶ 18-19, 122-27, 133-38. For example, the terms of those agreements required Eltoukhy and Talasaz "to devote their efforts to Illumina's business, to not compete with Illumina, to avoid conflicts of interest that could compromise their loyalty to Illumina, to assign to Illumina their inventions made while employed by Illumina that are related to Illumina's business, to protect Illumina's confidential and proprietary information, to not take or use Illumina's resources and property for their personal benefit, and to return Illumina materials to the company upon termination of their employment." *Id.* ¶ 19.

As Defendants concede, pleading "the essential terms of the contract" suffices to state a

claim for breach of contract. D.I. 30 at 23; *see, e.g.*, *United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, 2015 WL 4718998, at *3 (N.D. Cal. Aug. 7, 2015) ("[A] detailed description of the relevant provision and its import is more than sufficient to provide the facial plausibility required by the Supreme Court's decisions in *Iqbal* and *Twombly*."). The Complaint did so. Defendants strain to find fault with its allegations. Defendants complain that Illumina "does not even say 'how many agreements are at issue'" and "refers generally to 'various employment contracts and company policies'" (D.I. 30 at 23-24), yet in the next sentence admits the Complaint in fact specifies the four aforementioned agreements. *See* D.I. 1 ¶ 18. Defendants criticize the Complaint for "not distinguish[ing] among these contracts and point[ing] to a handful of alleged general terms without identifying the contract in which they are included or what alleged conduct by Drs. Eltoukhy and Talasaz breached each of those terms," but cite no authority suggesting that such granularity is required to state a claim. *See* D.I. 30 at 24 (citing decisions for the general proposition that the "essential terms" of the contract must be provided).

The Complaint identifies the specific contracts at issue and the terms violated by Eltoukhy and Talasaz; that suffices to state a claim. *See, e.g.*, D.I. 1 ¶¶ 18, 122-27, 133-38; *United Specialty*, 2015 WL 4718998, at *3 (general references to "policies" sufficed where complaint described "the relevant provision and its import"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (declining to require more specifics where complaint "reference[d] multiple confidentiality agreements" and "indicate[d] that [d]efendants breached all of the agreements").

## V.    CONCLUSION

For these reasons, Defendants' motion to dismiss should be denied. Yet were the Court to dismiss any portion of the Complaint, Illumina respectfully requests an opportunity to amend.

Dated: June 29, 2022

*Of Counsel*:

Christopher N. Sipes
Jeffrey H. Lerner
W. Kiersten Choi
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-6000

Jeffrey M. Davidson
Ellen Y. Choi
Kanu Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
(415) 591-6000

Yiye Fu
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4700

Respectfully submitted,

*/s/ Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Counsel for Plaintiff Illumina, Inc.*